**BAUERHIN TECHNOLOGIES LIMITED PARTNERSHIP, and John V. Carr & Son Inc., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant/Cross–Appellant.**

Nos. 96–1275, 96–1276.

United States Court of Appeals, Federal Circuit.

April 2, 1997.

Jerry P. Wiskin, Simons & Wiskin, New York City, argued for plaintiffs-appellants. With him on the brief was Philip Yale Simons.

Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, New York City, argued for defendant/cross-appellant. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Bauerhin Technologies Limited Partnership and John V. Carr & Son Inc. (collectively, Bauerhin) appeal from the summary judgment of the United States Court of International Trade holding that the United States Customs Service correctly classified their imported child seat inserts. *Bauerhin Techs. Ltd. v. United States*, 914 F.Supp. 554 (Ct. Int'l Trade 1995). The United States cross-appeals from the court's holding that Customs incorrectly classified certain canopies as parts of car seats. Because the court did not err in determining the proper classification for either the seat inserts or the canopies, we affirm.

## BACKGROUND

Bauerhin imports cushioned inserts and canopies for child seats. The cushioned inserts, described in the commercial invoices as "baby pads" or "upholstery for baby car seats," are specially designed to fit child automobile safety seats, infant carriers, and infant swings. It is undisputed that the inserts are imported in the shape and form of the seats for which they are designed and that they have sewn openings to allow the insertion of a restraining device or safety belts. It is also undisputed that the inserts are imported separately from the seats with which they are to be used, although when sold to the ultimate consumer they are either packaged together with the seats or sold specifically as replacement parts. Likewise,

the canopies are designed to fit over the child automobile safety seats and, although imported separately, are sold as parts of the seats to which they are attached.

The Harmonized Tariff Schedule of the United States (HTSUS) provides in pertinent part as follows:

Chapter 63.   Other made up articles; sets; worn clothing and worn textile articles; rags.
6307   Other made up articles, including dress patterns
                          * * *
   6307.90   Other:
      6307.90.99   Other:
                          * * *
                     Other
                          * * *
Chapter 94.   Furniture; bedding, mattresses, mattress supports, cushions and similar stuffed furnishings ...
9401   Seats (other than those of heading 9402), whether or not convertible into beds, and parts thereof:
                          * * *
   9401.90   Parts:
      9401.90.10   Of seats of a kind used for motor vehicles
                          * * *
9404   Mattress supports; articles of bedding and similar furnishing (for example, mattresses, quilts, eiderdowns, cushions, pouffes and pillows) fitted with springs or stuffed or internally fitted with any material or of cellular rubber or plastics, whether or not covered:
                          * * *
   9404.90   Other:
                  Pillows, cushions and similar furnishings:
      9404.90.10   Of cotton
      9404.90.20   Other

The seat inserts are composed of cotton and polyester with polyester fiberfill. Customs classified them under heading 9404.90.20 as non-cotton cushions under the broader heading of "articles of bedding and similar furnishing," dutiable at the rate of 6% *ad valorem*. Customs classified the imported canopies under heading 6307 as "other made up textile articles," and specifically under subheading 6307.90.94 (now 6307.90.99), dutiable at the rate of 7% *ad valorem*. This subheading is a basket provision, encompassing all "other made up textile articles" that are not enumerated elsewhere under that heading.

Bauerhin appealed to the Court of International Trade, arguing that Customs had misclassified both the inserts and the canopies. In particular, it argued that both items were properly classified under heading 9401 as parts of seats, with duties during the relevant time period no higher than 3.1%. Heading 9401 covers "seats (other than those of heading 9402), whether or not convertible into beds, and parts thereof." Subheading 9401.90.10 specifically covers parts of seats of a kind used for motor vehicles.

Although not persuaded by Bauerhin's arguments concerning the inserts, the Court of International Trade agreed with Bauerhin that the canopies should have been classified as parts of seats and not as "other made up textile articles." The court held that the canopies were properly classifiable as parts of car seats, notwithstanding the fact that they are not necessary to the operation of the car seats to which they are attached. Finding no genuine issues of material fact in dispute, the court held on summary judgment that Customs correctly classified the inserts in heading 9404, but incorrectly classified the canopies. The court held that the canopies are properly classified under subheading 9401.90.10.

## DISCUSSION

■ We review the Court of International Trade's grant of summary judgment "for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed.Cir.1991). Determining the proper scope of a classification in the HTSUS is an issue of statutory interpretation and thus a question of law. Determining whether a particular imported item falls within the scope of the various classifications as properly construed is a question of fact. *See Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir.1993). Because the nature and use of the imported products are not in dispute in this case, the resolution of this appeal turns on the determination of the proper scope of the relevant classifications.

### A.   The Seat Inserts

■ Bauerhin argues that heading 9404, "articles of bedding and similar furnishing," is limited to articles that have a primary purpose associated with sleeping or napping. Because sleeping or napping is not the principal use of the car seat inserts, Bauerhin

argues that the court erred by classifying the inserts within heading 9404. The government responds that the scope of heading 9404 is broader than the traditional notion of "bedding" and encompasses stuffed articles that render "comfort and protection." Specifically, the government argues that the court properly recognized that the car seat inserts are "cushions" within the meaning of subheading 9404.90.

The General Rules of Interpretation (GRI) for the HTSUS provide that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes," GRI 1, and that "[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules," GRI 6. Therefore, we begin our inquiry by examining the descriptions of the relevant headings, subheadings, and accompanying notes. Subheading 9401.90.10 covers "parts: of seats of a kind used for motor vehicles" within heading 9401 which includes "seats ... whether or not convertible into beds, and parts thereof." It is undisputed that the seat inserts fall within the description of heading 9401.

However, Note 3(b) for Chapter 94 of the HTSUS states: "Goods described in heading 9404, entered separately, are not to be classified in heading 9401, 9402 or 9403 as parts of goods." It is undisputed that the seat inserts are entered separately from the seats with which they are a part. Therefore, if the seat inserts are otherwise classifiable within both headings 9404 and 9401, Note 3(b) expressly excludes them from heading 9401. Thus, even though a fact finder might conclude that heading 9401 would ordinarily be the better classification for the imported seat inserts, heading 9404, if applicable, must prevail.

Had the heading and subheading descriptions of 9404 been limited solely to "articles of bedding and similar furnishing," Bauerhin's argument that seat cushions are not similar to bedding might have been more persuasive. However, given that "cushions" are specifically enumerated in the subheadings of 9404, Note 3(b) must control over heading 9401 as long as the term "cushions" is construed in accordance with its common and popular meaning. This must occur unless evidence of legislative intent indicates that the term was intended to exclude cushions designed to be used with seats. *See E.M. Chems. v. United States*, 920 F.2d 910 (Fed.Cir.1990) ("[T]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent."). No such legislative intent exists; in fact, the contrary appears to be true.

Bauerhin argues that the inserts cannot be classified under heading 9404 because they are not associated with beds, but are parts of seats. The government readily concedes that the inserts are parts of seats. However, the government contends that they are also undoubtedly cushions. Bauerhin responds that the term "cushions" must be interpreted in light of the heading description and that under the doctrine of *ejusdem generis*, the seat inserts cannot genuinely be considered "similar furnishing" to "bedding." *Ejusdem generis* is a well-settled rule of statutory construction which provides that

> where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.... As applicable to classification cases, *ejusdem generis* requires that the imported merchandise possess the essential characteristics or purposes that unite the articles enumerated *eo nomine* in order to be classified under the general terms.

*Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed.Cir.1994). Bauerhin argues that the imported seat inserts do not possess the essential characteristics of "bedding." Bauerhin contends that bedding must necessarily be limited to "materials for a bed." Bauerhin supports its interpretation by referring to the definition of "bedding" in the predecessor statute, the Tariff Schedules of the United States. In that statute, "bedding" was defined as "sheets, pillowcases, blankets, bedspreads, coverlets, quilts, comforters, and other articles, by whatever name

known, chiefly used as a bed furnishings, including mattress pads and covers, and spring pads and covers, all the foregoing of textile materials, but not including pillows, cushions, and mattresses." Tariff Schedules of the United States, Schedule 3, Part 5, Note 1. Bauerhin argues that the same definition applies to the term "bedding" in the HTSUS. We disagree.

The cited definition, which was not incorporated into the HTSUS, differs decisively from the articles enumerated in the description of heading 9404. That former definition expressly excludes "cushions," which are specifically enumerated under heading 9404. Moreover, heading 9404 refers to articles "fitted with springs or stuffed or internally fitted with any material." Heading 9404 does not include any nonstuffed articles typically associated with bedding such as sheets, pillowcases, blankets, bedspreads, mattress pads, and covers. With the addition of "cushions" and "pouffes," the dominant characteristic of the articles in 9404 is that they are all stuffed. Therefore, the legislative change in the schedule supports the conclusion that the term "cushions" in heading 9404 must be interpreted according to its ordinary meaning and thus includes seat cushions.

Furthermore, the Explanatory Notes for Chapter 94 of the HTSUS, published in 1988 by the Customs Cooperation Council, support this interpretation. Although not carrying the force of law or the weight of legislative history, the Explanatory Notes were produced contemporaneously with the tariff schedule and thus offer guidance in interpreting the subheadings. The Explanatory Notes state:

> Separately presented cushions and mattresses ... are *excluded (94.04)* even if they are clearly specialised [sic] as parts of upholstered seats (e.g., settees, couches, sofas). When these articles are combined with other parts of seats, however, they remain classified in this heading. They also remain in this heading when presented with the seats of which they form part.

Thus, our conclusion that Note 3(b) excludes separately presented seat cushions from heading 9401 is consistent with the Explanatory Notes. Whether or not the car seats are used primarily for "napping" is irrelevant. Accordingly, the Court of International Trade did not err by affirming Customs' classification of the inserts under heading 9404.

### B. *The Canopies*

■ The United States argues on cross-appeal that the Court of International Trade erred by reclassifying the imported canopies under heading 9401.90.10 as parts of seats. According to the United States, the canopies are properly classified in the basket provision under heading 6307 as "other made up textile articles." Customs' rationale is that the canopies are not "parts" as that term is used in the tariff schedule.

Rule 1(c) of the Additional U.S. Rules of Interpretation states that "a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory." Thus, if the canopies are properly considered "parts" and there is no specific provision for canopies in the HTSUS, then they are properly classified in heading 9401. However, the government contends that the canopies are not properly considered "parts" because of the rule established in *United States v. Willoughby Camera Stores, Inc.*, 21 C.C.P.A. 322, 1933 WL 1887 (1933).

In *Willoughby Camera*, our predecessor court held that a tripod was not properly classified as a part of a camera. The court noted that "[t]he mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other" and also stated in an oft-quoted passage that a part "is an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article." *Id.* at 324. The government argues that in light of the *Willoughby Camera* decision, there is a two-pronged test for determining whether an imported item is properly classified as a part: the item must be integral or directly related to the function of the article with which it is joined and the item must be solely or principally used with the article with which it is

joined. Thus, the government argues, because the canopies are not integral or directly related to the restraint function of the car seats to which they are attached, they cannot be parts of the car seats. We disagree.

*Willoughby Camera* is one of several cases which discuss how to differentiate parts from other articles under the particular facts presented in each case. *Willoughby Camera* dealt with an imported tripod that was not solely used with cameras, but was "used for various other purposes." *Id.* at 324. The imported tripod "perform[ed] its separate function without loss of any of its essential characteristics" when used independently of the camera. It was a "distinct and separate commercial entity" from the camera. *Id.* at 325. The court held that the tripod was not a "part."

That case does not control the result here. The facts in *Willoughby Camera* are considerably different from those presented here in which the article at issue, the canopy, serves no function or purpose that is independent of the child safety seat. It is undisputedly designed, marketed, and sold to be attached to the child safety seats. The facts of this case bear a closer resemblance to *United States v. Pompeo*, 43 C.C.P.A. 9, 1955 WL 6859 (1955). In *Pompeo*, the issue was whether an imported supercharger was properly considered a part of an automobile. There, the court looked to the nature and function of the *imported item*, the supercharger, to determine whether the item was a part of an automobile. The government in that case argued that because the automobiles were able to function with or without the supercharger, the imported supercharger was not properly considered a part of the automobile. The court disagreed, noting that the classification of the supercharger should turn on the nature of the supercharger and not on the design choices of the automobile manufacturer. Because the imported supercharger was "dedicated irrevocably for use upon automobiles," the court held that the supercharger was properly classified as a part of automobiles. *Pompeo*, 43 C.C.P.A. at 13.

The parties seem to take different positions regarding whether *Willoughby Camera* or *Pompeo* is the controlling precedent for

determining whether an imported item is or is not a "part" within the meaning of the tariff schedules. We conclude that these cases are not inconsistent and must be read together. As set forth in *Willoughby Camera*, an "integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article" is surely a part for classification purposes. 21 C.C.P.A. at 324. However, that test is not exclusive. *Willoughby Camera* does not address the situation where an imported item is dedicated solely for use with an article. *Pompeo* addresses that scenario and states that such an item can also be classified as a part.

Reconciling *Willoughby Camera* with *Pompeo*, we conclude that where, as here, an imported item is dedicated solely for use with another article and is not a separate and distinct commercial entity, *Pompeo* is closer precedent and *Willoughby Camera* thus does not apply. *See Gallagher & Ascher Co. v. United States*, 52 C.C.P.A. 11, 15–16, 1964 WL 8616 (1964) (noting that *Trans Atlantic Co. v. United States*, 48 C.C.P.A. 30, 1960 WL 8476 (1960), expressly limited the rule in *Willoughby* "to fact situations of the precise type which the court there had before it"). Under *Pompeo*, an imported item dedicated solely for use with another article is a "part" of that article within the meaning of the HTSUS. The canopies in this case are dedicated solely for use with the child safety seats. They are neither designed nor sold to be used independently. Therefore, the canopies are properly considered parts under the HTSUS.

In this case, there is no specific provision that covers the canopies. Rather, Customs argues that the canopies should be classified under a basket provision. Under Rule 1(c) of the Additional Rules of Interpretation, quoted above, a provision for a part must prevail over a mere basket provision. Accordingly, we hold that the Court of International Trade did not err by classifying the canopies under heading 9401 as parts of car seats.

## CONCLUSION

The Court of International Trade did not err in determining that the seat inserts were

properly classified as cushions within heading 9404. Furthermore, the court did not err in determining that the canopies were properly classified under heading 9401 as parts of seats.

*AFFIRMED.*