**MITSUBISHI INTERNATIONAL CORPORATION, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–1421.

United States Court of Appeals, Federal Circuit.

July 8, 1999.

Sandra Liss Friedman, Barnes, Richardson & Colburn, New York, New York, argued, for plaintiff-appellant. With her on the brief were Frederic D. Van Arnam, Jr. and Diane A. MacDonald.

Barbara S. Williams, Attorney, International Trade Field Office, Department of Justice, New York, New York, argued, for defendant-appellee. With her on the brief were David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York, New York.

Before MAYER, Chief Judge, RICH,* Circuit Judge and SMITH, Senior Circuit Judge.

MAYER, Chief Judge.

Mitsubishi International Corporation ("Mitsubishi") appeals the April 9, 1998 judgment of the United States Court of International Trade, Docket No. 95–05–00695, *Mitsubishi International Corp. v. United States*, 5 F.Supp.2d 991 (C.I.T. 1998) ("*Mitsubishi II* "), which granted the United States Customs Service's ("Customs") motion for summary judgment dismissing Mitsubishi's challenge to Customs' classification of its merchandise. Because the Court of International Trade correctly interpreted Note 2(a) of Section XVI of the Harmonized Tariff Schedule of the United States (1990) ("HTSUS") and properly classified Mitsubishi's merchandise, we affirm.

*Background*

In five shipments during 1990 and 1991, Mitsubishi imported twenty-five parts of a continuous steel casting machine from Japan. Continuous steel casting converts liquid steel into a solid slab without interrupting the production process.

Mitsubishi entered its parts under subheading 8454.90.00 of the HTSUS, which allows importation free of duty for "[c]onverters, ladles, ingot molds and casting machines, of a kind used in metallurgy or in metal foundries, and parts thereof: Parts ... Of casting machines." *See Mitsubishi II*, 5 F.Supp.2d at 995. In contrast, Customs classified the parts under several different subheadings that covered the identity and function of each article. *See id.* Mitsubishi paid all liquidated duties that were due and challenged the classifications in the Court of International Trade. *See id.* at 996. In 1997, both Mitsubishi and Customs moved for summary judgment.

Earlier, in a 1993 judgment for Mitsubishi, the Court of International Trade classified similar merchandise as parts of a continuous steel casting machine. *See Mitsubishi Int'l Corp. v. United States*, 829 F.Supp. 1387 (C.I.T.1993) ("*Mitsubishi I* "). The parts had been imported pursuant to the Tariff Schedule of the United States ("TSUS"), which provided, under General Rule of Interpretation 10(ij), that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." Because the parts were not specifically provided for under a separate subheading, the Court of International Trade classified them as parts of a continuous casting machine. *See id.* at 1395.

Mitsubishi argued in its 1997 motion that *Mitsubishi I* was controlling. However, the Court of International Trade held that the new language of the HTSUS required a different result. *See Mitsubishi II*, 5 F.Supp.2d at 1003. In particular, HTSUS Additional Rule of Interpretation 1(c) applies a specificity analysis to classifications only "[i]n the absence of special language or context." The Court of Inter-

---

* Circuit Judge Rich heard oral argument in this appeal and participated in consideration of the case, but died on June 9, 1999, and did not participate in the final decision.

national Trade found that Note 2(a) of Section XVI— "Parts which are goods included in any of the headings of chapters 84 and 85 ... are in all cases to be classified in their respective headings"—provides such language. *Id.* Thus, the specificity analysis employed in *Mitsubishi I* was no longer applicable.

Because all but one of Mitsubishi's parts could be classified under individual headings, the Court of International Trade granted summary judgment to Customs for twenty-four parts and Mitsubishi for one part. *See* 5 F.Supp.2d at 1019–20. Mitsubishi appeals.[1]

### Discussion

■ We review the Court of International Trade's grant of summary judgment "for correctness as a matter of law, deciding *de novo* ... whether genuine issues of material fact exist." *See New Zealand Lamb Co. v. United States*, 149 F.3d 1366, 1367 (Fed.Cir.1998) (internal citations omitted). Traditionally, we also interpret tariff provisions *de novo*. *See Sharp Microelectronics Tech., Inc. v. United States*, 122 F.3d 1446, 1449 (Fed.Cir.1997).[2]

■ Mitsubishi argues that the specificity analysis used to classify its parts in *Mitsubishi I* is still controlling. We disagree. That judgment interpreted provisions of the TSUS and does not apply to classifications made under differing language of the more recently enacted HTSUS. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1367 (Fed. Cir.1998) ("We can safely assume that Congress changed the language for a reason.").

Mitsubishi also contends that the HTSUS, by itself, requires the use of a specificity analysis when classifying its parts. The HTSUS, in Additional U.S. Rule of Interpretation 1(c), states that "[i]n the absence of special language or context which otherwise requires—(c) a provision for parts of an article covers products solely or principally used as a part of such articles but a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory." The Court of International Trade held that "special language" precluding this specificity analysis exists. We agree.

Note 2(a) of Section XVI provides that "[p]arts which are goods included in any of the headings of chapters 84 and 85 ... are in all cases to be classified in their respective headings." This provision is "special language or context" that renders Rule of Interpretation 1(c) inapplicable to the extent that they conflict. *Cf. Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1469 (Fed.Cir.1998) (holding that "there is no special language or context here that can be said to *require* a reversal of the plain language of Additional U.S. Rule of Interpretation 1(b)"). At issue,

---

**1.** Mitsubishi appeals the classification of only ten of its parts. Five of these parts—the torch approach table, torch roller table, torch run-out table, slab transfer table, and deburring table—were classified under subheading 8428.39 ("Other lifting, handling, loading or unloading machinery ...: Other continuous-action elevators and conveyors, for goods or materials: Other") at 2% *ad valorem.* Three parts—the ladle turret, tundish transfer car, and segment transfer car—were classified under subheading 8428.90 ("Other lifting, handling, loading or unloading machinery ...: Other machinery") at 2% *ad valorem.* Two parts—the No. 3–No. 7 and No. 8–No. 13 segment drive units—were classified under subheading 8501.32.20 ("Electric motors and generators (excluding generating sets): Of an

output exceeding 750 W but not exceeding 75 kW: Motors: Exceeding 750 W but not exceeding 14.92 kW") at 3.7% *ad valorem.*

**2.** We recognize that the Supreme Court held in *United States v. Haggar Apparel Co.*, —— U.S. ——, —— – ——, 119 S.Ct. 1392, 1397–98, 143 L.Ed.2d 480 (1999), that Customs regulations interpreting the HTSUS are entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Nevertheless, a regulation is not at issue here and, because no issue was raised by the parties and Customs' interpretation survives *de novo* review, it is not necessary to discuss *Haggar.*

therefore, is the proper interpretation of Note 2(a).

By requiring "[p]arts which are goods *included* in any of the headings of chapters 84 and 85" (emphasis added) to be classified under such headings, rather than as part of a machine, Note 2(a) prescribes a more expansive coverage than Mitsubishi proposes. There is nothing in the plain language of Note 2(a) suggesting the use of a specificity analysis. Indeed, Explanatory Note II to Note 2 of Section XVI states that where parts "themselves constitute an article covered by a heading of this Section ... these are in all cases classified in their own appropriate heading even if specially designed to work as part of a specific machine. This applies in particular to: ... (3) Lifting and handling machinery." *See generally Lonza, Inc. v. United States*, 46 F.3d 1098, 1109 (Fed.Cir. 1995) ("While the *Explanatory Notes* do not constitute controlling legislative history, they do offer guidance in interpreting [HTSUS] subheadings."). Accordingly, we hold that Note 2(a) requires a part that falls under an appropriate general heading to be classified under that heading, even if it could also be classified more specifically as part of a machine.

■ Mitsubishi asserts that this interpretation creates an incongruity between Note 2(a) and Note 4, which provides that "[w]here a machine (including a combination of machines) consists of individual components ... intended to contribute together to a clearly defined function covered by one of the headings in chapter 84 or chapter 85, then the whole falls to be classified in the heading appropriate to that function." According to Mitsubishi, Note 4 applies a specificity analysis to the classification of its parts, thereby conflicting with the Court of International Trade's interpretation of Note 2(a). We do not see this alleged discord.

Note 4 refers to the importation of a machine consisting of individual parts, not the importation of parts that can be used to build a machine. Therefore, it appears to apply only where substantially all the parts necessary to complete a machine are imported together. This interpretation is supported by Explanatory Note V to Section XVI, which declares that machines imported in an unassembled state "are classified as being the machine in question and not in any separate heading for parts.... However, unassembled components in excess of the number required for a complete machine ... are classified in their own appropriate heading." Mitsubishi's interpretation of Note 4—classifying all parts of a machine under the machine's heading, no matter how they are imported—would render Note 2(a) superfluous. *See Ratzlaf v. United States*, 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("Judges should hesitate ... to treat statutory terms [as surplusage] in any setting ....") (quoted in *City of Tacoma, Wash. v. Richardson*, 163 F.3d 1337, 1340 (Fed.Cir. 1998)). Moreover, even if Mitsubishi had imported only enough parts for a single machine, the parts at issue may still not have been considered "individual components ... intended to contribute together to a clearly defined function covered by one of the headings in chapter 84 or chapter 85."

Finally, Mitsubishi says that, even if the Court of International Trade's interpretation of Note 2(a) is correct, it erred in classifying the parts. We conclude that the classifications were correct and, because both parties agreed that there were no genuine issues of material fact, the Court of International Trade properly granted summary judgment to the United States.

### *Conclusion*

Accordingly, we affirm the judgment of the Court of International Trade.

*AFFIRMED.*