Slip Op. 06-116

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| FUJI AMERICA CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Before: MUSGRAVE, Judge** |
| v. | : | |
| | : | Court No. 03-00126 |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____

[Plaintiff challenged classification of merchandise by United States Customs and Border Protection under Harmonized Tariff Schedule of the United States ("HTSUS") heading 8479 as "Machines and mechanical appliances having functions, not specified or included elsewhere in this chapter, parts thereof . . . ." Plaintiff claimed that merchandise identified as a "chip placer" was properly classified under HTSUS heading 8428 as "Other lifting, handling, loading or unloading machinery . . . ," and that merchandise identified as a "feeder" was properly classified under heading 8431 as "parts" of machines of heading 8428. Plaintiff's motion for summary judgment was denied in its entirety. Defendant's cross-motion for summary judgment was granted in part and denied in part as the court found that the chip placers were properly classified under subheading 8479.89 as they did not passively lift and handle electronic components but, rather, played an active and integral role in making printed circuit assemblies and, further, that the feeders were properly classified under subheading 8479.90 as "parts" of those machines.]

Decided: July 26, 2006

_Katten Muchin Zavis Rosenman LLP_ (_Mark S. Zolno_, _Eric R. Rock_, and _David P. Sanders_) for the plaintiff.

_Peter D. Keisler_, Assistant Attorney General; _Barbara S. Williams_, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (_Arthur J. Gribbin_ and _Bruce N. Stratvert_); Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection (_Sheryl F. French_), of counsel, for the defendant.

## OPINION

Before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Plaintiff challenges the classification of the subject merchandise—certain

specialized machinery—by the United States Customs Service ("Customs").[1]  By its cross-motion,
defendant argues that Customs' classification was correct.  The Court has jurisdiction over this
matter pursuant to 28 U.S.C. § 1581(a) (2000).

## *Background*

The subject merchandise, consisting of machinery identified as "chip placers" and "feeders,"
was entered into the United States between January 3, 2001, and December 10, 2001.  Pl.'s
Statement of Material Facts not in Dispute ("Pl.'s Facts"), sec. 1, para. 1; Def.'s Resp. to Pl.'s
Statement of Material Facts not in Dispute ("DRPF"), sec. 1, para. 1.  Customs determined that all
of the subject merchandise was properly classified under heading 8479 of the Harmonized Tariff
Schedule of the United States (2001) ("HTSUS"), which provides for "Machines and mechanical
appliances having individual functions, not specified or included elsewhere in this chapter; parts
thereof . . . ," which would be assessed a duty rate of 2.5 percent *ad valorum*.  *Id*.  Plaintiff timely
protested Customs' classification, arguing that the chip placers were properly classified under
HTSUS heading 8428 as "Other lifting, handling, loading or unloading machinery (for example,
elevators, escalators, conveyors, teleferics) . . . ," which would enter duty free.  *See* Pl.'s Facts, sec.
1, para. 2; DRPF, sec. 1, para. 2.  Customs denied the protest, finding that the subject merchandise
was properly classified under heading 8479.  Plaintiff then timely commenced this action.

## *Standard of Review*

Where there is a dispute as to the classification of merchandise, that issue may be resolved
by means of summary judgment. *See Essex Mfg. v. United States*, 30 CIT __, __, Slip Op. 06-01 at

---

[1]     The United States Customs Service has been renamed United States Customs and
Border Protection.

5 (2006) ("*Essex*") (*citing Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) ("*Bausch & Lomb*")).  In a classification case, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT R. 56(c); *see Essex*, 30 CIT at __, Slip Op. 06-01 at 5.  "Summary judgment of a classification issue is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is."  *Essex*, 30 CIT at __, Slip Op. 06-01 at 5 (citing *Bausch & Lomb*, 148 F.3d at 1365; *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed. Cir. 1997) ("*Rollerblade*")) (internal quotation marks omitted).  "Where jurisdiction is predicated on 28 U.S.C. § 1581(a), Customs' interpretation of an HTSUS tariff term, a question of law, is subject to *de novo* review."  *Id.* (*citing* 28 U.S.C. § 2640(a)(1); *E.T. Horn Co. v. United States*, 27 CIT __, __, Slip Op. 03-20 at 4 (Feb. 27, 2003)).  It is incumbent upon the Court "to 'reach the correct decision' in classification cases . . . ."  *Rollerblade*, 112 F.3d at 484 (internal quotation marks and citations omitted).  Here, the parties agree that there are no material facts in dispute and, accordingly, resolution of this matter by summary judgment is appropriate.

The agreed-upon facts are the following.  The subject merchandise consists of two types of machines: "chip placers" and "feeders."  *See* Pl.'s Facts, sec. 2, para. 1; DRPR, sec. 2, para. 1.  A chip placer is "used in the manufacture/assembly of printed circuit assemblies (PCAs)."[2]  *See* Def.'s

---

[2]     The HTSUS defines PCAs as "goods consisting of one or more printed circuits . . . with one or more active elements assembled thereon, with or without passive elements.  For the purposes of this note, '*active elements*' means diodes, transistors and similar semiconductor devices . . . and integrated circuits and microassemblies . . . ."  Section XVI Additional U.S. Note 1.

Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("Def.'s Facts"),

para. 1; Pl.'s Resp. to Def.'s Statement of Material Facts Not in Dispute ("PRDF"), para. 1 ("Chip

placers are but one of several machines used in the multi-step process of manufacturing printed

circuit assemblies."). Chip placers are machines that "are used to place various electronic

components such as resistors, capacitors and circuits onto blank printed circuit boards ('PCBs').

This process is often referred to as 'populating' the PCBs." Pl.'s Facts, sec. 2, para. 2 (citing

Headquarters Ruling Letter ("HRL") 965608 (Sept. 10, 2002)); DRPF, sec. 2, para. 2. A chip placer

is a machine that is composed of several discrete units, including a loading system, a component

placement system, and a parts inspection system. *See* Pl.'s Facts, sec. 2, para. 3[3]; DRPF, sec. 2, para.

3; Pl.'s Reply to Def.'s Resp. to Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Reply to

DRPF") at 6; Def.'s Facts, para. 3; PRDF, para. 3; *see generally* Fuji Corp. Video of 3/11/02

("Video")[4]. The loading system receives PCBs from an external conveyor, moves PCBs within the

chip placer, and then disgorges populated PCBs onto a second external conveyor. Def.'s Facts, para.

---

[3]     *See also* Mem. In Supp. of Pl.'s Mot. for Summ. J. at Ex. 5, Attachs. In these documents, chip placers are stated to have the following system components: "XY-robots, PCB conveyors, part supply stations, placing heads, and part and fiducial inspection cameras." *See* Twin Station Multi-Function SMD Mounter NP-251E/251E-XL Mach. Specifications at 3; Multi-Function SMD Mounter QP-351E-MM Mach. Specifications at 2.

[4]     The Video was not filed concurrently with either parties' papers. Because, however, the parties reference the content of the Video (*see*, *e.g.*, Pl.'s Br. In Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. for Summ. J. at 5; Def.'s Reply Br. In Supp. of Mot. for Summ. J. and in Opp'n to Pl.'s Resp. at 2), and Customs reviewed the Video during the protest process (*see* HRL 965608), the Court requested that plaintiff file a copy of it, which plaintiff did. In the Video, Fuji's Applications Engineering Manager gives a detailed explanation of the functions of various machines—with an emphasis on chip placers—and the processes involved in making PCAs.

3. PRDF, para. 3; *see also* Video at 9:56:17–:32[5]; *id.* at 10:04:22–:30 (showing external conveyor introducing PCB into chip placer). The placement system consists of "numerous vacuum nozzles and heads, which populate the PCB with great accuracy and speed." Def.'s Facts, para. 3; PRDF, para. 3; *see* Video at 9:56:54–:57:15. The parts recognition system inspects components prior to placement to ensure that the correct component has been selected for placement. *See* Video at 9:57:16–:34.

The feeders at issue consist of two different types of machines: "motor" and "power" feeders. Pl.'s Facts, sec. 2, para. 4; DRPF, sec. 2, para. 4. The feeders are specifically designed to supply various electronic components to chip placers via a variety of different systems. *See*, *e.g.*, Def.'s Facts, para. 9; PRDF, para. 9; *id*. at para. 10. These systems include tape and tray feeders. Def.'s Facts, para. 10; PRDF, para. 10.

### *Discussion*

The parties argue that classification of the subject merchandise can be resolved by application of HTSUS General Rule of Interpretation ("GRI") 1. *See* Mem. In Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 20; Def.'s Mem. In Supp. of Its Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") at 7 ("The classification of the imported merchandise requires a straightforward application of HTSUS [GRI] 1 . . . ."). GRI 1 provides:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and,

---

[5]     These numbers refer to the time stamp on the Video. The stamp apparently refers to the date and time the Video was recorded. For clarity, the date and "AM" designations are not reproduced with the citations herein.

provided such headings do not otherwise require, according to the [other general rules of interpretation] . . . .

GRI 1; *Nidec Corp. v. United States*, 68 F.3d 1333, 1335 (Fed. Cir. 2005) ("*Nidec*") (citing GRI 1).

In the case at bar the parties agree that the chip placers are properly classified within HTSUS chapter

84. *See* Pl.'s Mem. at 16; Def.'s Mem. at 7. The parties differ, however, as to which heading within

chapter 84 the chip placers and feeders fall.

A

1

The Court first examines the classification of the chip placers. Customs classified the chip

placers under HTSUS heading 8479 and, more specifically, subheading 8479.89.9797, which covers

"Machines and mechanical appliances having individual functions, not specified or included

elsewhere in this chapter; parts thereof : . . . Other machines and mechanical appliances . . . Other:

Electromechanical appliances with self-contained motor . . . Other . . . Other . . . Other . . . ." *See*

HRL 965608. Customs stated that classification within heading 8479 was proper because the

function of the chip placers "is not a function described within the terms of heading 8428, HTSUS."

Customs further stated that the Court of International Trade

> upheld the Customs Service position that the scope of Heading 8428 covers a wide range of machinery for mechanical handling of materials, goods, people and other items. Citing technical sources, Customs has maintained that Heading 8428, HTSUS, covers material handling equipment[,] which are devices that transport, position and store raw materials and finished goods for industrial and commercial operations.

HRL 965608 (citing *Mitsubishi Int'l Corp. v. United States*, 22 CIT 324, 339, 5 F. Supp. 2d 991,

1005 (1998) ("*Mitsubishi I*"), *aff'd*, 182 F.3d 884 (Fed. Cir. 1999) ("*Mitsubishi II*")). Customs

reasoned that classification of the subject merchandise under heading 8479 was proper because

> [t]he chip mounter's function is to manufacture printed circuit assemblies by mounting (sometime[s] referred to as "populating") electronic components onto printed circuit boards. This position was further confirmed upon reviewing the videotape submitted by counsel on behalf of the protestant that demonstrated the chip placers. In the videotape, the machine is described as a high speed assembly machine. The machine's function is to populate the PCB with electronic components. It populates the PCBs by using a conveyor to load and unload a PCB under the vacuum nozzle placing heads. These placing heads retrieve the electronic components from one of the several types of feeders made by the manufacturer. We find that the chip mounters/placers do not meet the terms of Heading 8428, as they do not transport, position and store materials. Therefore, classification under Heading 8428 is precluded. Based upon our holdings in NY 884327 and in NY A88431, we find that the chip mounters/placers are classified in Heading 8479, HTSUS.

*Id*.

Plaintiff argues that the chip placers should be classified under heading 8428 as "Other lifting, handling, loading or unloading machinery (for example, elevators, escalators, conveyors, teleferics) . . . ."[6] Plaintiff contends that this is the proper classification of the chip placers due this

---

[6]      In further detail, heading 8428 provides for the classification of:

| | | |
|---|---|---|
| 8428.00 | Other lifting, handling, loading or unloading machinery (for example, elevators, escalators, conveyors, teleferics): . . . | |
| 8428.10 | Passenger or freight elevators other than continuous action; skip hoists . . . | |
| 8428.20 | Pneumatic elevators and conveyors . . . | |
| | Other continuous-action elevators and conveyors, for goods or materials: | |
| 8428.31 | | Specially designed for underground use . . . |
| 8428.32 | | Other, bucket type . . . |
| 8428.33 | | Other, belt type . . . |
| 8428.39 | | Other . . . |

(continued...)

Court's jurisprudence.  *See* Pl.'s Mem. at 24 (citing *Mitsubishi I*, 22 CIT 324, 5 F. Supp. 2d 991).

Plaintiff argues that, following *Mitsubishi I*, "[t]he Chip Placers' immediate, primary function is to

lift electronic components from the feeder banks by means of the vacuum nozzles and then handle

them in order to place them at the appropriate locations on the blank PCB."  Pl.'s Mem. at 24–25

(emphasis removed; citing Aff. of Dr. Kevin M. Lynch, ¶ 7).  While the Court agrees that *Mitsubishi*

*I* is instructive on this point, the Court does not agree that *Mitsubishi I* supports plaintiff's position.

In *Mitsubishi I* the Court was presented with the issue of the proper classification of various

machines used in a continuous steel casting process.  *See Mitsubishi I*, 22 CIT at 325, 5 F. Supp. 2d

at 994.  The plaintiff argued that classification of certain of those machines under heading 8428 was

not proper because none of them were operated by pulleys, winches or jacking systems and,

moreover, the exemplars listed in the heading moved raw materials, whereas the subject merchandise

---

[6](...continued)

| | |
|---|---|
| 8428.40 | Escalators and moving walkways . . . |
| 8428.50 | Mine wagon pushers, locomotive or wagon traversers, wagon tippers and similar railway wagon handling equipment . . . |
| 8428.60 | Teleferics, chair lifts, ski draglines; traction mechanisms for funiculars . . . |
| 8428.90.00 | Other Machinery . . . |
| 8428.90.00.02 | Of a kind used in charging or discharging furnaces . . . |
| 8428.90.00.04 | Of a kind used for radioactive materials . . . |
| 8428.90.00.06 | Woodland log handling equipment (other than skidders) . . . |
| | Other: |
| 8428.90.00.10 | Industrial robots . . . |
| 8428.90.00.20 | Oil and gas field machinery . . . |
| 8428.90.00.30 | Sidebooms and pipehandlers . . . |
| 8428.90.00.40 | Loaders, underground mine type . . . |
| 8428.90.00.90 | Other . . . . |

was part of an assembly process. *See id.* at 338–339, 5 F. Supp. 2d at 1005. The defendant

countered that heading 8428 covered a "wide range" of machinery, and that the proper question for

classification was what constituted the "primary function" of each of the machines. *Id*. at 339, 5 F.

Supp. 2d at 1005–06. The Court agreed that it was the "primary function" of a machine that was the

determining factor for classification, and proceeded to review each article using that standard. *See

id*. at 341, 5 F. Supp. 2d at 1007. The Court first examined several machines, including a "torch

approach table," a "torch roller table," a "torch runout table," and a "slab transfer table." *Id*. at 340,

5 F. Supp. 2d at 1006. The Court stated that the "tables are used to convey the solidifying steel

during the final forming operations. Each roller table consists of a frame onto which rollers with

bearings and drives are mounted and they advance and discharge the slab at a casting speed . . . ."

*Id*. The Court found that each of these items were properly classified under heading 8428 because

"the primary function of the components at issue is not making steel slabs but lifting and handling

materials." *Id*. at 341, 5 F. Supp. 2d at 1007; *see Mitsubishi II*, 182 F.3d at 887 (stating "[w]e

conclude the classifications were correct . . . ."). The Court next examined a machine called a

"deburring table." *Mistubishi I*, 22 CIT at 341, 5 F. Supp. 2d at 1007. The Court, noting that the

plaintiff conceded that "the deburring runout table is similar to the [other roller tables]," found that

it was properly classified under heading 8428 as a conveyor. *Id.* at 342, 5 F. Supp. 2d at 1008

(bracketing in original). The Court next examined several machines, including a "segment change

system," a "ladle turret," a "tundish transfer car," a "ladle-to-tundish shroud changing mechanism,"

a "tundish lifting beam," a "segment lifting beam," a "mold and first zone lifting beam," and a

"segment transfer car." *Id.* at 342, 5 F. Supp. 2d at 1008. The Court found that these machines were

all properly classified under heading 8428 because their primary function was to lift and handle various items. The Court reasoned that the ladle turret was properly classified under heading 8428 because its "primary function is lifting or handling materials." *Id.* at 343, 5 F. Supp. 2d at 1009. The Court reasoned that the tundish transfer car and the shroud changing mechanism were properly classified within heading 8428 because "[i]n their condition as imported . . . these components . . . perform lifting and handling functions." *Id.* at 345, 5 F. Supp. 2d at 1010. The Court noted that there was "no evidence that the tundish transfer car or shroud changing mechanism . . . perform additional casting operations . . . without parts added after importation." *Id.* Finally, the Court reasoned that the tundish lifting beam, segment changer system, segment lifting beam, mold and first zone lifting beam, and the segment transfer car were all properly classified under heading 8428 because "these components are described by plaintiff as having functions including aligning, transporting and removing steel slabs by lifting and handling." *Id.* at 347, 5 F. Supp. 2d at 1011.

In the case at bar, plaintiff argues that a chip placer's primary function is "lifting and handling" computer components. The Court does not agree. The main difficulty with this position is that it reduces the overall function of a chip placer to a single process within it. In other words, plaintiff's argument does not take into account a chip placer's entire function within the process of making PCAs. To better understand this point, the Court finds plaintiff's Video—which explains in detail how chip placers function—instructive.[7] According to the Video, a chip placer begins its function in making a PCA by having a PCB moved into the chip placer's internal loading system.

---

[7]     The Court uses plaintiff's model QP-351E-MM as the basis of its discussion, as the functioning of this model is explained in the Video and plaintiff has included that machine's design specifications with its papers. *See* Pl.'s Mem. at Ex. 5, Attach. 2.

Video at 10:04:21–:36. The loading system grasps the PCB, moves it into the chip placer's work area, lifts it into position, and locks it in place. *Id*. at 9:56:24–:31. After being locked in place, the chip placer uses a camera to locate fiducial marks printed on the PCB to determine the PCB's exact position within the work space. *Id*. at :56:34–:44. Using this information, the chip placer calculates an offset that allows accurate placement of components. *Id*. at :56:46–:52. Next, the chip placer selects a placement tool by moving the placement head to a "tooling fixture" where, depending on the size and type of component to be placed, the placement head is fitted with one of several vacuum nozzles or mechanical chucks.[8] *Id*. at :55:35–:56:10. The chip placer then moves the tooled placement head to a feeder station where a variety of components can be selected. *Id*. at :57:07–:15. After making a selection, the chip placer moves the placement head to the parts identification system, which takes a picture of the selected component. *Id*. at :57:16–:26. The chip placer then matches the picture of the selected component with a reference image to determine whether the correct component has been selected. *Id*. at :57:27–:34. After determining that the selected component is the correct component, the chip placer makes a calculation as to where the selected component is to be placed on the PCB. *Id*. at :57:35–:43 The chip placer then moves the placement head to the correct spot over the PCB and places the component on the PCB's surface.[9] *Id*. at :57:45–:48. After the chip placer places the selected component, it repeats the process. *Id*. at :57:50–:52. As the placement process progresses, the chip placer may, depending on the component

---

[8]      The mechanical chucks are vacuum actuated tools that grasp components with a pincer action. *See* Video at 9:55:53–:58.

[9]      Components are held in place during the population process by a variety of methods including "solder paste, conductive adhesives, and non-conductive adhesives." Glenn R. Blackwell, P.E., & James K. Hollomon, Jr., *Surface Mount Technology for PC Boards* 96 (2d ed. 2006).

to be selected, return the placement head to the tooling fixture to change the tooling on the placement head. *Id*. at :57:52–:58:04. In sum, the Video shows that a chip placer does not merely move materials (in this case PCBs and electronic components) from one place to another; instead, a PCB is introduced into a chip placer, the PCB has components placed on it, and the populated PCB exits the chip placer at the end of the process. In direct contrast to machines at issue in *Mitsubishi I*, the chip placers' primary function is not the passive lifting and handling of materials but, rather, an active and integral step in making PCAs. *See Mitsubishi I*, 22 CIT at 341, 5 F. Supp. 2d at 1007 ("[T]he primary function of the [machines] at issue is not making steel slabs but lifting and handling materials."). Therefore, because the chip placers' primary function is not "lifting and handling," they cannot be classified under heading 8428 as "Other lifting, handling, loading or unloading machinery . . . ."

Plaintiff presents several additional arguments in support of its position that chip placers are correctly classified within heading 8428. First, plaintiff takes issue with defendant's position that the chip placers cannot be classified in heading 8428 because they perform an "assembly" function. *See* Pl.'s Mem. at 27 (citing Def.'s Resp. to Pl.'s First Set of Interrogs. and Req. for Prod., ¶ 12). Plaintiff argues that "[t]he jurisprudence of this court and numerous Customs rulings make clear that the appropriate question is not whether a machine 'assembles,' but rather the function it performs in contributing to that assembly." *Id*. at 27. In support of its position plaintiff states that

> The clearest example of this distinction is in the *Mitsubishi* case . . . . In that case, all of the various machines at issue contributed to the assembly (or manufacture) of the steel slabs. The court specifically rejected the suggestion that all of the various machines should simply be classified as parts of a "steel casting machine" simply because they were part of the process whereby steel was cast

> into slabs. . . . [T]he appropriate inquiry is each machine's immediate, primary function within that process of assembly or production.

Pl.'s Mem. at 27. Again, the Court does not agree that *Mitsubishi I* supports plaintiff's argument. Specifically, in *Mitsubishi I* the plaintiff argued that a prior decision covering similar merchandise was controlling for the classification of the merchandise at issue. *See Mitsubishi I*, 22 CIT 331–332, 5 F. Supp. 2d at 999–1000. The Court disagreed, finding that the prior action was not controlling because the merchandise at issue had been classified under provisions of the Tariff Schedule of the United States ("TSUS") and not the HTSUS, and that the "special language" of the HTSUS dictated a different result. *See id.* at 336, 5 F. Supp. 2d at 1003 (examining GRI additional U.S. note 1(c); TSUS GRI 10(ij); HTSUS section XVI note 2(a)) ("The inclusion of Note 2(a) to Section XVI provides a 'context' which requires this Court to examine whether the components at issue are '[p]arts which are goods included in any of the headings of chapters 84 and 85' and thus whether they should 'be classified in their respective headings.'" (bracketing in original)). On appeal, the Court of Appeals for the Federal Circuit affirmed, stating that "[n]ote 2(a) of Section XVI provides that 'parts which are goods included in any of the headings of chapters 84 and 85 . . . are in all cases to be classified in their respective headings.' This provision is 'special language or context' that renders Rule of Interpretation 1(c) inapplicable to the extent that they conflict." *Mistubishi II*, 182 F.3d at 886 (citing *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1469 (Fed. Cir. 1998)). Here, the issue is not whether a chip placer is part of a larger assembly process. Instead, the issue has solely to do with the primary function of a chip placer. As previously stated, the classification of the chip placers within heading 8428 is not proper because they are not, as in *Mitsubishi I*,

machines that passively lift and handle materials from one place to another within a larger process. *See Mitsubishi I*, 22 CIT at 341, 5 F. Supp. 2d at 1007.

Next, plaintiff argues that the explanatory notes support its position that the chip placers are properly classified under heading 8428. Plaintiff argues that the chip placers "are industrial robots, as that term is used both in the Explanatory Notes and in the robotics industry at large . . . ." Pl.'s Mem. at 29. Therefore, plaintiff reasons, because the chip placers are industrial robots that perform the primary function of lifting and handling, they are excluded from heading 8479. *Id*.; *see* Explanatory Note 84.79(I) ("[T]he heading excludes those industrial robots specifically designed to perform a specific function; these industrial robots are classified in the heading covering their function . . . ."). Again the Court does not agree. The main problem with this argument is that, even were it established that the chip placers are industrial robots (a point with which defendant disagrees), a necessary prerequisite to classifying an article under heading 8428 is that it has as its primary function the passive lifting and handling of material and, as discussed, this simply is not the case with chip placers. *See Mitsubishi I*, 22 CIT at 341, 5 F. Supp. 2d at 1007. Furthermore, were it agreed that the chip placers are industrial robots, this fact alone would not exclude them from classification under heading 8479, as that heading specifically provides for the classification of industrial robots. *See* HTSUS subheading 8479.50 ("Industrial robots, not elsewhere specified or included . . . .").

Finally, plaintiff argues that the Court should not give deference to the ruling letter that addresses the classification of the chip placers. *See* Pl.'s Mem. at 40 (citing HRL 965608). Plaintiff contends that this ruling letter is not entitled to deference because it is "neither thorough nor well-

reasoned. [It is] also not consistent with Customs' prior interpretation of Heading 8428." *Id*.

Plaintiff reasons that the ruling letter "lack[s] power to persuade" and, therefore, is not to be

accorded deference. *Id*. (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1934); *United States v.*

*Mead*, 533 U.S. 218, 235 (2001) ("*Mead*")); *see also Rocknel Fastener v. United States*, 267 F.3d

1354, 1357 (Fed. Cir. 2001) ("*Rocknel*") (citing *Mead*, 533 U.S. at 235). As the chip placers are

correctly classified under heading 8479 the Court does not address the question of whether the ruling

letter has the "power to persuade."[10]

For all the foregoing reasons the Court finds that the chip placers cannot be properly

classified under HTSUS heading 8428.

2

The Court next turns to the correct classification of the chip placers. As previously noted,

GRI 1 provides that for "legal purposes, classification shall be determined according to the terms of

the headings and any relative section or chapter notes . . . ." GRI 1; *Nidec*, 68 F.3d at 1335; *see*

*Ciba-Geigy Corp. v. United States*, 22 CIT 1155, 1162–63, 44 F. Supp. 2d 207, 213 (1998) ("GRI

1 instructs that in addition to the plain language of the headings themselves, chapter notes are to be

used in fully determining the meaning of tariff headings."), *aff'd*, 223 F.3d 1367, 1372–73 (Fed. Cir.

---

[10]     The Court notes that were the chip placers not properly classified within heading 8479 plaintiff's argument might have some merit, as an examination of the ruling letter reveals that at least one of its main premises is incorrect. Specifically, the ruling letter, citing *Mitsubishi I*, states that "Customs has maintained that Heading 8428, HTSUS, covers material handling equipment[,] which are devices that transport, position and store raw materials and finished goods for industrial and commercial operations." *See* HRL 965608 (citing *Mitsubishi I*, 22 CIT at 339, 5 F. Supp. 2d 1005). A review of *Mitsubishi I*, however, shows that this was not, in fact, Customs' "position" in that case. Instead, the cited language is a synthesis of two quotations from the *plaintiff's* brief. *See Mitsubishi I*, 22 CIT at 339 nn.6 & 7, 5 F. Supp. 2d at 1005 nn.6 & 7. Nowhere in *Mitsubishi I* is it indicated that Customs either advocated or adopted these definitions. *See generally id*.

2000) ("The plain language of Note 1(a), read in conjunction with Note 2(f) of Chapter 29, can only be interpreted to mean that Headings 3203 and 3204 are the only acceptable classifications within Chapter 32 for a 'separate chemically defined compound.'").  Thus, to classify the chip placers, GRI 1 must be read "in conjunction" with the relevant notes for chapter 84.  The chapter notes provide that

> A machine which is used for more than one purpose is, for the purposes of classification, to be treated as if its principal purpose were its sole purpose.
>
> Subject to note 2 to this chapter and note 3 to section XVI, a machine the principal purpose of which is not described in any heading or for which no one purpose is the principal purpose is, unless the context otherwise requires, to be classified in heading 8479. . . .

Chapter 84 note 7.[11]  Here, the chip placers' primary function is to perform an active and integral role in making PCAs.  *See Mitsubishi I*, 22 CIT at 341, 5 F. Supp. 2d at 1007.  A review of chapter 84 shows that none of the headings describe this primary function and, therefore, pursuant to note 7, the

---

[11]     Section XVI note 3 provides:

> Unless the context otherwise requires, composite machines consisting of two or more machines fitted together to form a whole and other machines adapted for the purpose of performing two or more complementary or alternative functions are to be classified as if consisting only of that component or as being that machine which performs the principal function.

Chapter 84 note 2 provides, in relevant part:

> Subject to the operation of note 3 to section XVI, a machine or appliance which answers to a description in one or more of the headings 8401 to 8424 and at the same time to a description in one or more of the headings 8425 to 8480 is to be classified under the appropriate heading of the former group and not the latter. . . .

chip placers are properly classified under heading 8479. The fact that the chip placers are to be classified under heading 8479 does not conclude the classification process, however, as there are several subheadings within that heading. *Rollerblade*, 112 F.3d at 484; *see Diachem Indus., Ltd., v. United States*, 22 CIT 889, 893 (1998) (citing *Alcan Aluminium Corp. v. United States*, 21 CIT 1238, 986 F. Supp. 1436, 1443 (1998), *rev'd on other grounds*, 165 F.3d 898 (Fed. Cir. 1999)) ("If the chapter notes and headings are dispostitive, the Court need not engage in the analysis of subordinate rules and other interpretation."). Pursuant the General Rules of Interpretation:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

GRI 6. A review of heading 8479 shows that none of the terms of the subheadings describe the chip placers or their primary function, and, therefore, classification of the subject merchandise under the "other" subheading of 8479.89.9797 is proper.

For all the foregoing reasons, the Court finds that chip placers are not "lifting, handling loading or unloading machinery" that can be classified under heading 8428 but are, rather, "Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter . . ." that are properly classified under heading 8479.

B

The Court next turns to the classification of the feeders. Plaintiff argues that the feeders should be classified under heading 8431, which covers "Parts suitable for use solely or principally

with the machinery of heading 8425 to 8430 . . . ." *See* Pl.'s Mem. at 33. In response, defendant argues that classification of the feeders under heading 8431 is inappropriate "inasmuch as the machine of which these feeders are parts of is not a Heading 8428 machine." Def.'s Mem. at 22. The Court agrees that classification of the feeders within heading 8431 is not appropriate as they are not "parts" of a machine of one of the headings listed therein.

The question then becomes the proper classification of the feeders. Defendant argues that Customs' classification of the feeders under the same subheading as the chip placers—8479.89—was proper. *See* Def.'s Mem. at 22. The Court does not agree. As a preliminary matter, while the parties differ as to the precise characterization of the feeders (*i.e.*, whether or not they perform an inseparable function of the chip placers, *see* DRPF, sec. 2, para. 8; Pl.'s Reply to DRPF, sec. 2, para. 8), they agree that the feeders are "parts" to be used with the chip placers. *See* Pl.'s Mem. at 33 (citing *Bauerhin Techs. Ltd v. United States*, 110 F.3d 774 (Fed. Cir. 1997)); Def.'s Mem. at 22 (citing section XVI note 2(a)). Thus, to properly classify these "parts," the Court turns to the HTSUS notes for guidance. GRI 1; *Mitsubishi II*, 182 F.3d at 886. The section notes provide, in relevant part:

> [P]arts of machines . . . are to be classified according to the following rules:
>
> > (a) Parts which are goods included in any of the headings of chapters 84 and 85 (other than headings 8409, 8431, 8448, 8466, 8473, 8485, 8503, 8522, 8529, 8538 and 8548) are in all cases to be classified in their respective headings;
> >
> > (b) Other parts, if suitable for use solely or principally with a particular kind of machine, or with a number of machines of the same heading (including a machine of

> heading 8479 or 8543) are to be classified with the machines of that kind or in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate. . . .

Section XVI note 2. Defendant argues that section note 2(a) is controlling because the feeders are machines that can perform their function independently from the chip placers. *See* Def.'s Facts, para. 14 (citing Def.'s Resp. to Pl.'s Interrogs.; Aff. of David Losche) ("The function of feeding, which is performed by the Feeders[,] is separate from the function of mounting electrical components onto a printed circuit board, which is performed by the Chip Placers."). In contrast, plaintiff argues that section note 2(b) is controlling because the feeders' design and function is inexorably intertwined with that of the chip placers. *See* PRDF, para. 14 ("[A]vers that, the Chip Placers cannot operate without having components in place. The components are supplied to the chip placer by feeders in a manner that allows the Chip Placer to function as designed."). Plaintiff contends that, following Court of Appeals for the Federal Circuit precedent, the feeders should be considered integral "parts" of the chip placers. Pl.'s Br. In Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. for Summ. J. ("Pl.'s Reply") at 28 (citing *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774 (1997) ("*Bauerhin*")). As pointed out by plaintiff, in *Bauerhin* the Court of Appeals for the Federal Circuit stated that "an imported item dedicated solely for use with another article is a 'part' of that article within the meaning of the HTSUS." *Bauerhin*, 110 F.3d at 779 (citing *United States v. Pompeo*, 43 CCPA 9 (1955)). Here, plaintiff explains that the feeders are "solely" designed to be used with the chip placers because

> the motor feeders and power feeders are specially designed to attach to a Chip Placer and communicate with its programmable controller in order to synchronize operation with the Chip Placer exclusively.

These feeders cannot be sold for use with any other machine, and more importantly, perform no function other than to feed parts to a Chip Placer. The feeders are not general equipment which could be sold independently for use with other machines.

Pl.'s Reply at 29 (citing Suppl. Wischoffer Aff., ¶ 10); *see also* Video at 9:54:58–:55:29; 10:01:24–:02:30; 10:10:14–:16:12 (explaining function of feeders). The Court agrees that the feeders are integral parts of chip placers because they are "an imported item dedicated solely for use with another article . . . ." *Bauerhin*, 110 F.3d at 779. Therefore, as they are "suitable for use solely or principally with a particular kind of machine . . . ," the feeders "are to be classified with the machines of that kind or in heading 8409, 8431, 8448, 8466, 8473, 8503, 8522, 8529 or 8538 as appropriate." Section XVI note 2(b). Because the feeders cannot be classified under heading 8431 as parts of machines of heading 8428, and as no other heading describes the feeders, they are, thus, properly classified under the same heading as the chip placers—8479. As previously noted, heading 8479 is divided into several subheadings and, therefore, consideration of each is necessary. GRI 6; *see Rollerblade*, 112 F.3d at 484 (stating it is the Court's duty "to 'reach the correct decision in classification cases . . . .'"). An examination of the subheadings of heading 8479 shows that subheading 8479.90 specifically provides for the classification of "parts."[12] A further review of subheading 8479.90 shows that classification of the feeders is not specifically provided for therein and, therefore, they are properly classified under subheading 8479.90.9595 as "Machines and mechanical appliances having individual functions, not specified or included elsewhere in this

_____

[12]     While neither alleged in its complaint nor argued in its papers, plaintiff, by its summons, raises the possibility that the feeders are properly classified under subheading 8479.90. *See* summons. Indeed, plaintiff identified 8479.90 as the proper subheading for classification of the feeders in its entry papers. *See* HRL965394 (Sept. 10, 2002).

chapter; parts thereof . . . Parts . . . Other . . . ."[13]  The Court, therefore, denies both plaintiff's and defendant's motion for summary judgment as to the classification of the feeders, and finds that they are properly classified under HTSUS subheading 8479.90.9595.  *Rollerblade*, 112 F.3d at 484.

### *Conclusion*

For all the foregoing reasons, the Court finds that the chip placers are properly classified under HTSUS subheading 8479.89.9797 as "Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof . . . Other machines and mechanical appliances . . . Other: Electromechanical appliances with self-contained electric motor . . . Other . . . Other . . . Other . . . ," and that the feeders are properly classified under HTSUS subheading 8479.90.9595 as "parts" of such machines.  Judgment shall enter accordingly.

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Judge

Dated: July 26, 2006
    New York, New York

---

[13]     Because defendant agrees that the feeders are "parts" of the chip placers, and since subheading 8479.90 specifically provides for the classification of "parts," classification of the feeders under precisely the same subheading as the chip placers—8479.89—is not proper.  *See Rollerblade*, 112 F.3d at 484.