**CITY OF TACOMA, WASHINGTON,**
Plaintiff–Appellee,

v.

**Bill RICHARDSON, Secretary,**
**U.S. Department of Energy,**
**Defendant–Appellant.**

No. 98–1073.

United States Court of Appeals,
Federal Circuit.

Dec. 8, 1998.

Timothy R. Volpert, Davis Wright Tremaine, LLP, of Portland, Oregon, argued for plaintiff-appellee. With him on the brief was James S. Smith.

Mary K. Doyle, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Frank W. Hunger, Assistant Attorney General and Barbara C. Biddle, Attorney.

Before MAYER, Chief Judge, NEWMAN, and CLEVENGER, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER. Dissenting opinion filed by Circuit Judge CLEVENGER.

MAYER, Chief Judge.

The United States Department of Energy, acting through the Western Area Power Administration ("WAPA"), appeals the judgment of the United States District Court for the Western District of Washington, which denied its motion to transfer the city of Tacoma's action against WAPA to the United States Court of Federal Claims. *See City of Tacoma v. O'Leary,* No. 96–CV–5699 (W.D.Wash. Aug. 12, 1997). Because the district court correctly held that it had jurisdiction over the case pursuant to 43 U.S.C. § 390uu (1994), we affirm.

## Background

On December 31, 1984, Tacoma entered into a twenty-year contract, superseding a similar 1983 contract, to provide WAPA electric energy to cover shortfalls in power supplied by the Department of Energy's Central Valley Project. The Central Valley Project is a federal reclamation project that was designed primarily to supply irrigation water to the West, and consists of dams, hydroelectric power plants, and irrigation canals. *See City of Santa Clara v. Watkins,* 984 F.2d 1008, 1010 (9th Cir.1993). The project can sell or lease power generated in excess of its needs; it can also protect itself against insufficient supplies of power by agreeing to purchase electric energy, as it did with Tacoma.

The contract stated that WAPA could give Tacoma a one-year notice of termination if the average yearly incremental cost of energy purchased pursuant to the agreement exceeded a certain threshold. On August 24, 1995, an audit determined that the purchase cost had exceeded this threshold. Subsequently, on January 17, 1996, WAPA gave Tacoma a letter purporting to be a one-year notice of termination.

Tacoma brought suit in the United States District Court for the Western District of Washington, seeking a declaratory judgment that WAPA lacked authority to terminate the contract. In addition to claiming that the complaint was brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702–706 (1994) ("APA"), Tacoma argued that WAPA's decision to terminate the contract exceeded its statutory authority, was in violation of the contract, and was arbitrary, capricious, and an abuse of discretion. Tacoma moved for summary judgment, asserting that WAPA lacked grounds for terminating the contract and its method of termination violated the agreement. WAPA cross-moved for summary judgment, alleging that its decision was justified. Finally, Tacoma moved, unchallenged, to amend its complaint to add remedial claims for a declaratory judgment that the termination notice violated the contract, and damages resulting from this alleged breach; and a declaratory judgment that WAPA had waived its right to termination. The district court denied summary judgment to both parties because genuine issues of material fact were present.

The district court also raised two issues *sua sponte* : whether Tacoma's claims satisfied certain requirements under the APA, and whether the court had subject matter jurisdiction. The latter question is at issue here.

Subsequently, WAPA argued that the waiver of sovereign immunity under the Reclamation Reform Act of 1982, 43 U.S.C. § 390uu (1994), applies only to those agreements implicating a repayment or water service contract, as the term "contract" is defined in 43 U.S.C. § 390bb(1) (1994). The district court rejected this assertion, holding that section 390uu's waiver of immunity is not limited by section 390bb(1)'s definition of "contract," thereby providing the court subject matter jurisdiction over the claims against WAPA. Repeating its immunity contention, WAPA then moved for transfer to the Court of Federal Claims, contending that the Tucker Act, 28 U.S.C. § 1491(a) (1994), gives exclusive jurisdiction to that court; the district court denied the motion. WAPA appeals.

*Discussion*

■ WAPA asks us to hold that the district court's refusal to transfer this case to the Court of Federal Claims is in error. "We review decisions of the district courts on questions of jurisdiction under a *de novo* standard of review." *Kanemoto v. Reno*, 41 F.3d 641, 643 (Fed.Cir.1994). Moreover, "[t]his is an issue of statutory interpretation, over which we exercise plenary review." *Ed A. Wilson, Inc. v. General Services Admin.*, 126 F.3d 1406, 1408 (Fed.Cir.1997). Accordingly, our review of the district court's decision not to transfer this case is *de novo*.

■ The power agreement at issue was entered into pursuant to the Reclamation Reform Act of 1982, which covers all federal reclamation law. *See* 43 U.S.C. § 390aa (1994). Here, we must interpret the scope of the act's sovereign immunity waiver, under section 390uu, which provides:

Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to this section may be brought in any United States district court in the State in which the land is situated.

*Id.* § 390uu.

■ Section 390uu's waiver clause, when read alone, states that the government's sovereign immunity is waived for "any suit." When a statute suggests an absurd result, however, we must look beyond its plain meaning. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 510–11, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) ("No matter how plain the text of the [Federal Rule of Evidence] may be," where it produces such an absurd result, it "can't mean what it says.") (internal citation omitted). Moreover, the Supreme Court has "repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, for 'literalness may strangle meaning.'" *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962) (internal citations omitted), *quoted in Wilson*, 126 F.3d at 1409. The question presented here requires us to determine whether section 390uu waives the government's sovereign immunity for a claim implicating a contract to purchase power under federal reclamation law.

As noted, the power purchase agreement was made pursuant to the Central Valley Project, which provides water and power to the West and was the largest reclamation project undertaken at its inception. *See Ivanhoe Irrigation Dist. v. McCracken*, 357

U.S. 275, 280, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958). WAPA would have us exclude power contracts under the Central Valley Project, and other federal reclamation programs, from the Reclamation Reform Act's waiver of sovereign immunity. We decline to do so.

Because the word "contract" appears in section 390uu—in its joinder clause—WAPA argues that its waiver clause should be limited by section 390bb's definition of "contract," which is confined to "any repayment or water service contract between the United States and a district providing for the payment of construction charges to the United States including normal operation, maintenance, and replacement costs pursuant to Federal reclamation law." 43 U.S.C. § 390bb(1) (1994). We believe, however, that the use of the word "contract" in section 390uu is broader than the definition employed in section 390bb.

WAPA's contention that section 390bb's definition of "contract" applies to section 390uu ignores the phrase "pursuant to Federal reclamation law" used to modify "contract" in both sections. Interpreting "contract" in section 390uu as referring exclusively to repayment or water service contracts under federal reclamation law creates a redundancy, impermissively making language in the statute superfluous. *See Ratzlaf v. United States,* 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("Judges should hesitate ... to treat statutory terms [as surplusage] in any setting...."); *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 510 (Fed.Cir.1995) ("Congress is presumed not to have used superfluous language."). Congress would not have used the phrase "pursuant to Federal reclamation law" to modify "contract" in section 390uu if it intended that section to apply solely to "any repayment or water service contract ... [made] pursuant to Federal reclamation law." 43 U.S.C. § 390bb(1) (1994). It appears to us, therefore, that Congress employed the "pursuant to Federal reclamation law" limitation in section 390uu to mean just that.

Other uses of "contract" in the Reclamation Reform Act also suggest that Congress did not intend to apply section 390bb's definition throughout the act. *See, e.g.,* 43 U.S.C. § 390pp (1994) (referring to legitimate conveyances satisfying a debt, such as a "real estate contract"). Just as the use of "real estate contract" in section 390pp applies to other than repayment or water service contracts, section 390uu's scope— "any contract executed pursuant to Federal reclamation law"— is broader than section 390bb's definition of "contract." To hold otherwise would encroach upon Congress's ability to further modify "contract" in the Reclamation Reform Act.

The legislative history of section 390uu also shows that Congress intended for the waiver of sovereign immunity to cover all contracts made pursuant to federal reclamation law. The conference committee report stated that section 390uu "gives the consent of the United States to be sued to determine the rights of any entity which is a party to a reclamation contract with the United States. The provision is a waiver of the sovereign immunity of the United States." H.R. Conf. Rep. No. 97–855, at 33 (1982); *see also Sumner Peck Ranch, Inc. v. Bureau of Reclamation,* 823 F.Supp. 715, 746 (E.D.Cal.1993) ("The legislative history indicates a broad waiver of immunity was intended. No conditions are placed on the ability of a party to a reclamation contract to sue the government."). This report reflects Congress's intent to waive sovereign immunity for federal reclamation contracts, not just repayment or water service contracts. Furthermore, while none has directly addressed the question presented here, other courts have interpreted section 390uu as providing a broad waiver of sovereign immunity. *See Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 673–74 (9th Cir.1993) (finding a waiver for suit seeking injunctive and declaratory relief under water allocation contracts); *Sumner Peck,* 823 F.Supp. at 745–46 (finding a waiver for breach of contract claims against government as sole defendant).

■ WAPA correctly states that a statutory provision should be read with regard to

the entire act. *See Sterling Fed. Sys., Inc. v. Goldin,* 16 F.3d 1177, 1185 (Fed.Cir.1994) ("[A] basic rule of statutory construction is that the whole of the statute should be considered in ascertaining the meaning of language therein.") While we acknowledge that the primary purpose of the Reclamation Reform Act was to provide water, its scope applies to all federal reclamation law, *see* 43 U.S.C. § 390aa (1994), and we do not believe that the use of the word "contract" in section 390uu is limited to repayment or water service contracts. Moreover, although we acknowledge the dissent's policy concerns, they are for Congress, not us.

■ We also recognize that a waiver of sovereign immunity must be unequivocal and "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Here, the waiver is far from ambiguous. Indeed, the clarity of the waiver and its breadth is the problem. But we cannot limit its scope just because the statute apparently provides an extremely broad waiver of immunity.

### Conclusion

Accordingly, the order of the district court is affirmed.

*AFFIRMED.*

---

CLEVENGER, Circuit Judge, dissenting.

At oral argument, we tested the outer limits of the waiver of sovereign immunity that the court endorses today for suits on contracts that further the purposes of the Reclamation Reform Act. There are none. Every contract the government enters into concerning activity that promotes the interests of all federal reclamation law—whether for office supplies at WAPA, or to have a WAPA building painted, virtually any contract that WAPA signs—carries a waiver of sovereign immunity.

For this reason—the boundless waiver that moots the Contract Disputes Act of 1978—

the government seeks a narrower and more reasonable waiver. I agree with the government.

It is of course true that section 390uu describes a waiver for "any" contract suit, but, as the court candidly notes, the authors of the *Reclamation Reform Act took care to provide a specific definition of the term "contract":*

> As used in this subchapter [including in section 390uu, the home of the broad waiver adopted by the court]:
>
> > (1) The term "contract" means any repayment or water service contract between the United States and a district providing for the payment of construction charges to the United States including normal operation, maintenance, and replacement costs pursuant to Federal reclamation law.

43 U.S.C. § 390bb(1) (1994).

Whether this suit can go forward in the United States District Court depends upon whether the broad waiver in section 390uu is, or is not, limited by the express definition of contract written in section 390bb(1). Jurisdiction in the district court under the Administrative Procedure Act cannot lie when an adequate remedy is available elsewhere, as it is in this case, in the United States Court of Federal Claims.

We are instructed that "[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (further citations omitted)). A waiver is to be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 191, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citation omitted). Further, when a waiver provision can be interpreted reasonably in more than one way, we cannot say that the waiver has been unequivocally expressed. *See Nordic Village,* 503 U.S. at 37, 112 S.Ct. 1011.

I could stop here, because, to my mind, when it takes several pages to explain why the court prefers the broad waiver in section 390uu to the narrower waiver commanded by section 390bb(1), the broad waiver fails the "unequivocal" test. But there is more.

In the broad waiver provision, the Congress also provided that "[a]ny suit pursuant to this section may be brought in any United States district court in the State in which the land involved is situated." 43 U.S.C. § 390uu (1994). As the Government demonstrates in its brief, this provision makes no sense when one is concerned with the WAPA contract for office supplies. There is no "land involved" in such a suit, nor is there any land involved in this power supply suit. Land, however, is necessarily involved in suits between irrigation contractors and the United States.

Finally, I think it makes sense that Congress would restrict the waiver of sovereign immunity to the contracts identified in section 390bb(1). As I understand the relevant federal reclamation law, the Government pays for a massive public works project that will supply water where needed. The Government then enters into contracts with the beneficiaries of the public works project that are designed to reimburse the Government through repayment or water service terms. For such matters, the Government is a provider of services to the public, and the Government waives its sovereign immunity to suit in case of disagreements between the Government and the contracting parties, for otherwise, the public would be without recourse.

Other matters, such as the contract in this case, involve the supply of services by the public to the Government as purchaser. I see a principled distinction between the two kinds of contracts, and perceive no need for a boundless waiver of sovereign immunity with regard to the latter. I think that contracts for the supply of services or products to the United States should be adjudicated under the waiver of sovereign immunity in the Contact Disputes Act, unless the Congress has expressly conferred a waiver elsewhere.

When I apply the required canons of construction for waivers of sovereign immunity, I am driven to the conclusion that the court is wrong in this case. The motion to transfer to the Court of Federal Claims should have been granted.

I respectfully dissent.