# United States Court of Appeals for the Federal Circuit

---

**PERSONALIZED USER MODEL, LLP,**
*Plaintiff-Cross-Appellant*

**YOCHAI KONIG,**
*Counterclaim Defendant-Cross-Appellant*

v.

**GOOGLE INC.,**
*Defendant-Appellant*

---

2014-1841, 2015-1022

---

Appeals from the United States District Court for the District of Delaware in No. 1:09-cv-00525-LPS, Chief Judge Leonard P. Stark.

---

Decided: August 18, 2015

---

RICHARD SALGADO, Dentons US LLP, Dallas, TX, argued for plaintiff-cross-appellant, counterclaim defendant-cross-appellant. Also represented by MARC S. FRIEDMAN, New York, NY. Plaintiff-Cross-Appellant also represented by MARK CHRISTOPHER NELSON, Dallas, TX.

DAVID ANDREW PERLSON, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for defendant-appellant. Also represented by CHARLES KRAMER

VERHOEVEN; JOSHUA L. SOHN, Washington, DC; ANDREA PALLIOS ROBERTS, Redwood Shores, CA.

———————————

Before PROST, *Chief Judge*,
LOURIE and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Google Inc. ("Google") appeals from the decision of the United States District Court for the District of Delaware granting judgment as a matter of law in favor of Personalized User Model, LLP ("PUM") and Yochai Konig ("Konig") (collectively, "Appellees") on Google's breach of contract counterclaim. Order, *Personalized User Model LLP v. Google Inc.*, C.A. No. 09-525-LPS (D. Del. Sept. 17, 2014), ECF No. 724. PUM cross-appeals from the district court's decision construing the claims of U.S. Patents 6,981,040 ("the '040 patent") and 7,685,276 ("the '276 patent"). *Personalized User Model LLP v. Google Inc.*, C.A. No. 09-525-LPS, 2012 WL 295048, at *15–16 (D. Del. Jan. 25, 2012). Because the district court did not err in granting judgment as a matter of law, we *affirm* the district court's decision appealed by Google. Moreover, we *dismiss* the cross-appeal because we lack jurisdiction over the issue as raised.

BACKGROUND

Konig was employed by SRI International ("SRI") from April 1996 to August 1999. At the beginning of his employment, Konig signed an Employment Agreement, which stated:

In consideration of my employment at SRI International, I agree:

. . .

3. To promptly *disclose to SRI all discoveries, improvements, and inventions, including software,*

> *conceived or made by me during the period of my employment*, and I agree to execute such documents, disclose and deliver all information and data, and to do all things which may be necessary or in the opinion of SRI reasonably desirable, in order to effect transfer of ownership in or to impart a full understanding of such discoveries, improvements and inventions to SRI . . . . *I understand that termination of this employment shall not release me from my obligations hereunder . . . .*

J.A. 1417 (emphases added).

In May 1999, while still employed by SRI, Konig and a friend who was not employed by SRI started generating documents marked confidential, relating to a personalized information services idea that they called "Personal Web." J.A. 1281–1302, 1303–08. Konig and his friend then formed a company named Utopy, incorporated in Delaware on July 22, 1999, and Konig left SRI two weeks later, on August 5, 1999. In 2001, while Konig was developing the Personal Web products at Utopy, he asked a research scientist still at SRI to test the products. Appellant's Br. 15.

Meanwhile, Konig filed a provisional patent application on December 28, 1999. On June 20, 2000, Konig filed an application based on the provisional, which issued as the '040 patent on December 27, 2005, and listed Utopy, Inc. as the assignee. Utopy then assigned the '040 patent to another party, who in turn assigned the patent to PUM. Konig filed another patent application in 2008, naming PUM as the assignee, and that application issued as the '276 patent on March 23, 2010.

In July 2009, PUM sued Google in the District Court for the District of Delaware, asserting infringement of the '040 and '276 patents. During discovery, PUM provided interrogatory responses that asserted that the conception

date for the invention claimed in the asserted patents was in July 1999, while Konig was still at SRI, and produced documents to prove that. Google subsequently contacted SRI and acquired "any rights" that SRI had in the asserted patents, J.A. 1410–11, and brought a counterclaim for breach of contract in February 2011. Google asserted that Konig owed a duty to transfer ownership to SRI of any inventions conceived during his employment with SRI; that Konig breached the employment agreement by failing to assign his interest in the related patents to SRI; and that Google (by way of SRI) therefore was a rightful co-owner. J.A. 504–20. PUM and Konig responded that the counterclaim was time-barred as filed more than three years after the claim first accrued. J.A. 728, 740; *see* 10 Del. C. § 8106. Before trial, the court construed several claim terms in the '040 and '276 patents, including the term "document." *Personalized User Model v. Google*, 2012 WL 295048, at *15–16.

The district court then presided over a jury trial on the issues of infringement, validity, and breach of contract. The jury found that Google did not infringe any asserted claim of the '040 and '276 patents and that all asserted claims were invalid. The jury was also instructed concerning two means by which the three-year statute of limitations could have been tolled, such that Google's claim would not be time-barred: the discovery rule and the Delaware tolling statute, 10 Del. C. § 8117. The jury then found that the three-year statute of limitations for Google's breach of contract claim was tolled, and that Konig breached the employment contract. J.A. 1482.

After the court entered judgment on the verdict, PUM and Konig moved for judgment as a matter of law ("JMOL") on the breach of contract counterclaim. The district court issued a letter with preliminary thoughts, informing the parties that the court was inclined to grant PUM's and Konig's motion on Google's contract counterclaim on the basis that the claim was time-barred. Letter,

Apr. 7, 2014, ECF No. 677. The court stated that the statute of limitations was not extended beyond three years because, in its view, no reasonable jury could have found that the injury was "inherently unknowable." *Id.* at 6–7. The court noted that the evidence at trial showed that SRI had reason to investigate Konig's potential breach of contract. *Id.* at 7.

The district court then held a hearing on PUM's and Konig's JMOL motion on the breach of contract counterclaim. J.A. 9–31 (transcript). The court again stated its determination that no reasonable juror could have found that the injury, the basis for the counterclaim, was "inherently unknowable" and that SRI was not on inquiry notice. J.A. 30. The court also noted that there was no evidence that SRI exercised any diligence, finding that, had SRI undertaken any reasonable investigation, it would have discovered that the invention was conceived during Konig's employment at SRI. J.A. 30. The court concluded that no reasonable juror could find that SRI was "blamelessly ignorant." J.A. 30.

The district court also rejected Google's argument that § 8117 allows "an action that had no connection to Delaware [to be brought], as long as no more than three years have passed since the time that the defendant . . . became subject to service of process." J.A. 31. The court expressed its concern that such an interpretation would "permit any party sued in Delaware to respond with counterclaims having no connection to Delaware, no matter how stale those claims are, no matter that the statute of limitations in the state in which those claims arose had expired long ago." J.A. 31. The court therefore granted JMOL in favor of PUM and Konig on the breach of contract counterclaim. J.A. 31; J.A. 47.

Google timely appealed from the district court's grant of JMOL on the counterclaim, and PUM cross-appealed from the district court's claim construction. PUM did not

appeal from the district court's judgment of invalidity and noninfringement. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In an appeal of a case that has been tried to a jury, we review the district court's grant of JMOL under the law of the regional circuit. *Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1312 (Fed. Cir. 2005). Applying the law of the Third Circuit, we review the court's grant of JMOL *de novo*. *Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011); *LePage's Inc. v. 3M*, 324 F.3d 141, 145 (3d Cir. 2003) (en banc). In reviewing the grant of JMOL after a jury trial, the relevant question is "whether there is evidence upon which a reasonable jury could properly have found its verdict." *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995); *see also* Fed. R. Civ. P. 50(a) (JMOL is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [prevailing] party on that issue."). We must view the record in the light most favorable to the verdict winner, drawing all reasonable inferences in its favor, *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc), but JMOL "must be sustained if the record is critically deficient of the minimum quantum of evidence from which the jury might reasonably afford relief," *Gomez*, 71 F.3d at 1083.

## I. Discovery Rule Tolling

We first address the district court's holding that the discovery rule did not toll the statute of limitations period, because if the limitations period was not tolled, then Google's suit is time-barred. "Application of the 'time of discovery' rule is limited, and each case must stand or fall on its own facts." *Isaacson, Stolper & Co. v. Artisans' Sav. Bank*, 330 A.2d 130, 133–34 (Del. 1974). The discovery rule in Delaware provides that the statute of limitations period is tolled while "the injury is inherently unknowa-

ble" and "the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Coleman v. PriceWaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004). Even if an injury is inherently unknowable, the discovery rule does not toll the limitations period *unless* the claimant is blamelessly ignorant. *See Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 835 (Del. 1992) (stating that discovery rule requires both elements to toll statute of limitations); *accord David B. Lilly Co. v. Fisher*, 18 F.3d 1112, 1117 (3d Cir. 1994). A claimant can show blameless ignorance with evidence that its reasonably diligent investigation would not have uncovered facts sufficient to enable it to discover the basis for its claim. *Coleman*, 854 A.2d at 842–43; *Layton v. Allen*, 246 A.2d 794 (Del. 1968) (finding plaintiff to be blamelessly ignorant "before she knew, or by reasonable diligence could know" of her claims); *cf. Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252–53 (D. Del. 1990) (finding claimant not blamelessly ignorant where it had a right of inspection, was entitled to hire an independent accountant, and was an experienced business entity).

Google argues that the breach of contract injury that SRI suffered was inherently unknowable, and therefore that SRI was not on inquiry notice to investigate a possible claim. According to Google, Delaware precedent requires a "red flag" that "clearly and unmistakably" should have led a party to investigate a potential claim. Because there were competing inferences that could have been drawn from the evidence provided at trial, Google asserts that a reasonable jury could have found that none of the information available to SRI would have made SRI suspicious of a breach of contract. Alternatively, Google argues that SRI was blamelessly ignorant because a jury could have reasonably inferred that any investigation that SRI could have done would not have uncovered the conception of the invention at SRI, which provides the basis for the claim. Google contends that under Delaware law,

reasonable diligence does not require that an investigation be conducted if such an effort would have been futile.

Appellees respond that Google bore the burden of proving that both elements of the discovery rule were satisfied to toll the statute of limitations. Even if SRI would not have uncovered the conception during the period of employment, Appellees assert that SRI had sufficient cause to investigate even after Konig was no longer employed by SRI. Appellees argue that the extremely high bar for establishing that an injury was "inherently unknowable" was not met because Google failed to show that it was "practically impossible" for SRI to discover the injury. Appellees also claim that proof of "blameless ignorance" is independently essential for tolling under the discovery rule to apply, and counters that Google presented no evidence to show that SRI tried to protect its rights or otherwise exercised reasonable diligence. Because Google failed to meet its burden on either element, Appellees maintain, the district court did not err in concluding that no reasonable jury could have found that the discovery rule tolled the limitations period.

Even viewing the record in the light most favorable to Google and drawing all reasonable inferences in its favor, we agree with the district court that Google did not provide legally sufficient evidence for the jury to find that the injury was inherently unknowable or that SRI was blamelessly ignorant, and therefore could not invoke the discovery rule to toll the limitations period.

First, Google failed to prove that the injury was inherently unknowable. Unlike a situation in which a patient after surgery has virtually no way of knowing that a surgical instrument was negligently left inside, *cf. Layton*, 246 A.2d at 796, SRI knew that Konig was leaving to immediately work at a start-up technology company. Considering the competitiveness of companies and institutes in the technical world and, as Google has ar-

gued, that the technology was related to Konig's work at SRI, his departure and new venture could well have been a "red flag" that should have generated an inquiry whether Konig had conceived an invention during his employment with SRI that he might intend to develop and commercialize with his new company.

More importantly, Google failed to show that SRI was blamelessly ignorant of Konig's alleged breach of contract. Google's attempts to dispense with its burden of proof for the blamelessly ignorant element of the discovery rule by arguing the futility of any inquiry do not compensate for its failure of proof. Despite the opportunities for SRI to have inquired about Konig's departure and his new venture—the obvious one being an exit interview, at which an inquiry might have been made regarding whether Konig had made any inventions at SRI that had not been reported to SRI—the record is critically deficient on the minimum quantum of evidence necessary to show that SRI did anything to protect its interests. One might have asked, even if an answer might not have been forthcoming, what was Konig going to do in his new company? SRI might have learned of the Personal Web products by asking other SRI employees, such as the scientist who tested the products in 2001, or by monitoring the new start-up for a period of time after Konig's departure. Companies can also watch competitive patent filings. Even if a reasonable investigation might not have given SRI definitive proof of a breach of contract, we agree with the district court that such actions could have uncovered clues as to a potential claim. In fact, neither party presented any evidence about whether a reasonable investigation would have revealed that Konig invented the Personal Web products during his employment at SRI.

We therefore agree with the district court that there is insufficient evidence in the record to support findings that any breach was inherently unknowable and that SRI was blamelessly ignorant. Employers do not need to track

a former employee's every movement for an indefinite period of time to look for potential claims, but there should be some basic level of diligence in looking after one's interests. *Cf. Layton*, 246 A.2d at 799; *Coleman*, 854 A.2d at 842. Whether that is satisfied by evidence of a standard exit interview wherein the departing employee is asked if all contractual obligations have been met, or of inquiring unobtrusively about the employee's new startup company, should be determined on a fact-specific basis. *See Isaacson*, 330 A.2d at 133–34; *Brown v. E.I. duPont de Nemours & Co.*, 820 A.2d 362, 368 (Del. 2003) ("To apply the discovery exception, the court must conduct a fact-intensive inquiry to determine whether a plaintiff was blamelessly ignorant of a potential claim or dilatory in pursuing the action."); *Coleman*, 854 A.2d at 842 ("The application of [the discovery] rule is necessarily based on the facts of each case.").

We thus see no error in the district court's findings that Google failed to prove that any breach of Konig's employment agreement was inherently unknowable or that SRI was blamelessly ignorant, and we therefore agree with the district court that the discovery rule did not toll the statute of limitations period.

## II. Statutory Tolling

We next address the district court's holding that the Delaware tolling statute also did not toll the statute of limitations period. Section 8117 of Title 10 of the Delaware Code, titled "Defendant's absence from State," reads as follows:

> If at the time when a cause of action accrues against *any person*, such person is *out of the State*, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. If, after a cause of action shall have ac-

crued against any person, *such person departs from and resides or remains out of the State*, the time of such person's *absence* until such person shall have returned into the State in the manner provided in this section, shall not be taken as any part of the time limited for the commencement of the action.

10 Del. C. § 8117 (emphases added). The Delaware Supreme Court has stated that "the purpose and effect of Section 8117 is to toll the statute of limitations as to defendants who, at the time the cause of action accrues, are outside the state and are not otherwise subject to service of process in the state." *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochem. Co.*, 866 A.2d 1, 18 (Del. 2005) (citing *Hurwitch v. Adams*, 155 A.2d 591, 594 (Del. 1959)).

At the JMOL hearing, as indicated, the district court briefly addressed the issue of statutory tolling. The court rejected Google's proffered interpretation of § 8117, stating that it did not understand the statute to mean that any party sued in Delaware could assert stale counterclaims with no connection to Delaware.

Google argues that because the plain language of § 8117 does not restrict its application to claims with a connection to Delaware, the limitations period was tolled for claims against Konig, who was not physically in or subject to service of process in Delaware before PUM's infringement suit. Google relies on *Saudi Basic* for the propositions that the claims need not be under Delaware law and that neither the plaintiff nor the defendant needs a connection to Delaware. Even so, Google asserts that the claim does have ties to Delaware and therefore that the district court's public policy concern was inapt in this case. Google also insists that SRI's rights could not have been vindicated anywhere else at an earlier time.

Appellees respond that § 8117 is meant to protect Delaware residents who have a cause of action against a

potential defendant who has evaded Delaware's jurisdiction.  Appellees counter that Google's interpretation of the statute would effectively abolish the statute of limitations for claims against non-Delaware residents, which would be an absurd result.  Appellees maintain that the breach of contract counterclaim had no connection to Delaware, and that neither SRI nor Konig were Delaware residents.

We have not found a Delaware Supreme Court decision explicitly holding that § 8117 requires a particular connection to Delaware, but our understanding of the statute's meaning in light of Delaware case law supports the district court's decision.  *See Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 165 (Fed. Cir. 1985) (noting that when there is no decision by the highest state court on a specific state law issue, the Federal Circuit must decide whether the district court properly predicted applicable state law).

We agree with the district court that § 8117 should not apply to toll the statute of limitations period in this case.  Although the statute on its face does not require any connection to Delaware, we agree with the district court's disinclination to interpret the statute so broadly as to apply to any claim, claimant, or defendant.  The Delaware Supreme Court has held that the tolling statute does not necessarily apply "in any action in which the defendant is a non-resident"; such an application "would result in the abolition of the defense of statutes of limitation in actions involving non-residents."  *Hurwitch*, 155 A.2d at 593–94 (citing *Lewis v. Pawnee Bill's Wild West Co.*, 66 A. 471 (Del. 1907) as rejecting such an interpretation).  Accordingly, to read § 8117 as granting Delaware courts the ability to hear cases with no ties to Delaware whatsoever, without any limits in time, as long as the defendant at some point enters the state of Delaware or otherwise becomes subject to service of process, and the plaintiff brings suit within the associated statute of limitations period, would result in untoward results.  *See, e.g., City of*

*Tacoma v. Richardson*, 163 F.3d 1337, 1339 (Fed. Cir. 1998) ("When a statute suggests an absurd result, however, we must look beyond its plain meaning."); *accord United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) (rejecting "plain meaning" interpretation that would lead to "absurd or futile results" or "an unreasonable result" clearly at odds with legislative policy).

*Saudi Basic* involved a foreign claim and a foreign counterclaim-defendant who was not amenable to service of process in the United States, but it also involved *claimants who were residents of Delaware* at the time the cause of action originally accrued. *Saudi Basic*, 866 A.2d at 16. That is not true in this case.

Other cases that discuss § 8117 and its previous incarnations also have some connection to Delaware, as would be logical for the application of a Delaware law. *See, e.g.*, *Brossman v. FDIC*, 510 A.2d 471, 473 (Del. 1986) (cause of action originally arose in favor of Delaware resident); *D'Angelo v. Petroleos Mexicanos*, 398 F. Supp. 72, 80 (D. Del. 1975) (plaintiff and predecessor were Delaware residents); *United Indus. Corp. v. Nuclear Corp. of Am.*, 237 F. Supp. 971, 973 (D. Del. 1964) (plaintiff was Delaware corporation); *Klein v. Lionel Corp.*, 130 F. Supp. 725, 726 (D. Del. 1955) (plaintiff was Delaware retail merchant); *Glassberg v. Boyd*, 116 A.2d 711, 712 (Del. Ch. 1955) (derivative action brought by stockholder of Delaware corporation); *Hurwitch*, 155 A.2d at 592 (accident occurred in Delaware); *Pawnee Bill's*, 66 A. at 472 (injury occurred in Delaware).

Unlike *Saudi Basic* and the rest of the case law in which § 8117 is applied or otherwise discussed, here there was no tie to Delaware at the time the cause of action accrued. While Google is incorporated in Delaware, and hence is a Delaware resident, this cause of action accrued in California, with a California claimant and a California defendant. The employment agreement was executed in

California by two California residents, SRI and Konig. The alleged breach occurred in California, during Konig's employment. Google's argument that SRI's contract rights could not have been effectively vindicated earlier is unpersuasive. This was not a situation in which Konig was beyond the jurisdiction of California courts or otherwise not amenable to service of process. SRI could have brought suit against Konig in California. Google being a Delaware resident is insufficient to bootstrap its claim into having a Delaware connection; SRI was not a Delaware resident at the time of the alleged breach, and Google acquired the rights to the claim years later, well after the limitations period had run. We thus find that Google failed to prove that § 8117 should apply to its counterclaim.

We therefore conclude that the district court reached the correct result in finding that the statute of limitations period for Google's breach of contract counterclaim was not tolled by § 8117 and affirm its conclusion that § 8117 did not toll the statute of limitations period.

## III.  Cross-Appeal

Finally, we address PUM's cross-appeal regarding the district court's construction of the claim term "document." PUM has not challenged the jury's verdict of noninfringement on appeal.

PUM argues that the district court erred in construing the term by inserting the requirement of an "electronic file" into the term "document" as used in the specification and claims of the '040 and '276 patents. PUM insists that the issue is not moot because that construction may affect any future litigation involving the claims that were not invalidated in this case, and claims in related patents, and asserts that this court may rectify that by vacating the district court's claim construction.

Google responds that there is no longer a live infringement controversy between the parties because the district court found the claims not infringed, PUM did not seek any further district court proceedings on infringement, and the U.S. Patent and Trademark Office cancelled all asserted claims in *inter partes* reexamination. Google asserts that this court lacks jurisdiction to issue a claim construction opinion to ensure the proper construction of PUM's patents in the future, where such an opinion would not resolve a present infringement controversy.

We agree with Google that we lack jurisdiction over PUM's cross-appeal. Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," neither of which is presented by PUM's cross-appeal relating to the district court's alleged error in claim construction. *See Jang v. Bos. Scientific Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (declining to render advisory opinion as to claim construction issues that "do not actually affect the infringement controversy between the parties"). PUM in fact admitted that there is no live controversy presented here and that modifying the claim construction has no effect on the outcome of this case. *E.g.*, Oral Arg. at 28:40–42, 29:02–29:09, *Personalized User Model, LLP v. Google Inc.*, Nos. 2014-1841, 2015-1022, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1841.mp3. Despite PUM's concerns that the construction might be given preclusive effect in future litigation involving its related patents, we may not provide an advisory opinion on the meaning of a claim term that does not affect the merits of this appeal and thus is not properly before us. We therefore decline to review the district court's claim construction.

## CONCLUSION

Because neither the discovery rule nor § 8117 tolled the statute of limitations period in this case, the district court's decision granting judgment as a matter of law in

favor of PUM and Konig on the breach of contract counterclaim is affirmed. The cross-appeal relating to the claim construction issue is dismissed.

### AFFIRMED IN PART, DISMISSED IN PART

COSTS

No costs.