NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MANTISSA CORPORATION,**
*Plaintiff-Appellant*

**v.**

**FIRST FINANCIAL CORPORATION, FIRST FINANCIAL BANK, N.A.,**
*Defendants-Appellees*

---

2022-1963

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:17-cv-09174, Judge Virginia M. Kendall.

---

Decided: February 14, 2024

---

ANTHONY JOHN DEMARCO, Young Basile Hanlon & MacFarlane, P.C., Houston, TX, argued for plaintiff-appellant.

RYAN RONALD SMITH, Wilson, Sonsini, Goodrich & Rosati, PC, Palo Alto, CA, argued for defendants-appellees.

---

Before DYK, SCHALL, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring-in-part and dissenting-in-part filed by *Circuit Judge* SCHALL.

Dyk, *Circuit Judge*.

Mantissa Corporation ("Mantissa") appeals from a final judgment of invalidity with respect to certain claims of U.S. Patent No. 9,361,658 ("'658 patent"). We conclude that the district court correctly determined that the term "transaction partner" is indefinite and affirm the judgment of the district court that claims 1, 3, 7, 8, 10–12, and 15 of the '658 patent are invalid for indefiniteness. We also conclude that we lack the authority to determine whether the district court properly construed the term "OFF." We *affirm*.

## BACKGROUND

Mantissa owns the '658 patent, titled "System and Method for Enhanced Protection and Control Over the Use of Identity." The patent concerns an improved way to protect against identity theft, fraud, and other unauthorized uses of identifying information. Mantissa brought suit against First Financial Corporation and First Financial Bank, N.A. (collectively, "First Financial") in the District Court for the Northern District of Illinois, alleging infringement of claims 1, 3, 7, 8, 10–13, and 15 of the '658 patent.

Independent claim 1 of the '658 patent is representative[1]:

---

[1]    Claims 1, 7, and 13 are independent claims. Claims 3 and 5 depend from claim 1. Claims 8, 10, 11, 12, and 15 depend from claim 7. Claim 13 was withdrawn from the suit.

1. A method for a service provider to control use of an entity's financial account to facilitate transactions, comprising:

setting scope of use, defined by the entity via a network, for the financial account, including at least:

(a) the financial account to either <u>OFF</u> or ON;

(b) for <u>a plurality of individual categories, whether each category is authorized or unauthorized for transactions using the financial account, each category representing a different type of transaction partner</u>; and

(c) a geographical scope reflecting a geographic area in which transactions are authorized;

receiving, via a network from a source other than the entity, an inquiry regarding a proposed transaction that would use the financial account;

determining, relative to the scope of use, whether the financial account may or may not be used for the proposed transaction, comprising:

denying when the financial account is <u>OFF</u>;

denying when the financial account is ON and the proposed transaction falls within a category that is unauthorized;

denying when the financial account is ON, the proposed transaction falls within a category that is authorized and when a location of the proposed transaction is outside of the geographical area;

permitting when (a) the financial account is ON, (b) the proposed transaction falls within a category that is authorized, (c) a location of the proposed transaction is inside the geographical area, and (d) the proposed transaction is not otherwise impermissible; and

responding to the inquiry by providing, via a network to the source, first information based on the result of the determining.

'658 patent, col. 15, ll. 20–53 (emphasis added).

At the claim construction phase, the parties disputed two terms: (1) "transaction partner" and (2) "OFF." The district court determined that "transaction partner" was indefinite and construed "OFF" to mean "a status in which any use of the financial account is to be denied." *Mantissa Corp. v. First Fin. Corp.*, No. 17 C 9174, 2022 WL 1487577, at *8, *10 (N.D. Ill. May 11, 2022).

Based on the district court's determination that "transaction partner" is indefinite, the parties filed a joint motion for entry of final judgment. Thus, all of the asserted claims, except claim 13, were invalidated as indefinite because they included the term "transaction partner." In accordance with the joint motion, Mantissa agreed to withdraw claim 13 and not assert it against First Financial. Pursuant to the stipulation, the district court entered final judgment under Fed. R. Civ. P. 54(b). J.A. 18.

Mantissa appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.    Transaction Partner

"We review claim construction based on intrinsic evidence de novo and review any findings of fact regarding extrinsic evidence for clear error." *Grace Instrument Indus. v. Chandler Instruments Co.*, 57 F.4th 1001, 1008 (Fed. Cir. 2023).  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  "The ultimate conclusion that a claim is indefinite under 35 U.S.C. § 112, ¶ 2 is a legal conclusion, which we review de novo." *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (footnote omitted).

A

At the district court, First Financial relied on testimony from its expert, Dr. Rhyne, to support its argument that the term "transaction partner" is indefinite.  The district court concluded that Dr. Rhyne was a person of ordinary skill in the art ("POSA") and relied on his testimony to conclude that "transaction partner" was indefinite.  Mantissa argues that the district court's definition of a POSA is incorrect because it did not require that a POSA have "at least three years of experience in the field of systems for processing and authorizing transactions in a financial account over a computer network," Appellant Opening Br. 18 (emphasis omitted), that under the correct definition Dr. Rhyne was not a POSA, and that the district court erred in considering his testimony.

On appeal, both parties devote considerable attention to the arguments of whether Dr. Rhyne qualifies as a POSA

and whether the district court erred in relying on his testimony to determine that "transaction partner" was indefinite. We do not need to address this issue because in this case the issue of indefiniteness can be resolved based on the intrinsic evidence alone, as both parties agree. Oral Arg. at 4:42–5:06 (Mantissa agreeing we can rule on indefiniteness based on the intrinsic record), 24:22–25:00 (First Financial agreeing we can rule on indefiniteness based on the intrinsic record); *see Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 n.6 (Fed. Cir. 2014) (noting it was "unnecessary" to rely on expert testimony or "any other extrinsic evidence" to conclude the claims were indefinite).

B

Here the intrinsic evidence establishes that the claims are indefinite. The patent aims to address the problems of identity theft, fraud, and unauthorized access to an identity holder's account or identifying information "by giving an individual or other entity increased control over implied or direct use of his identity." '658 patent, col. 2, ll. 16–18. The invention "provides protection of the identity of an entity by placing limitations or conditions on its use, and whereby the entity's use-enabling identification information is not fully needed to authorize a transaction." *Id.*, col. 1, ll. 22–25. As part of the invention, use restrictions on an account (e.g., permitting uses only during certain times of day or prohibiting certain uses altogether, etc.) can be put in place such that "[a]ttempts to use [the] identity outside the authorized scope will be denied, preventing misuse before it takes place and identifying a possible fraud in progress . . . ." '658 patent, col. 5, ll. 57–60.

The invention involves, at least, three entities: an identity owner, a service provider, and a user. An identity owner is a person with identifying information who is the owner of an account or location. A service provider is a computer operator or automated program that authorizes or denies transactions involving the account or location

based on information it receives from the identity owner. A user is the entity that maintains the account or location and is in some circumstances either seeking permission from the service provider to access the identity owner's account or location or seeking permission for third parties to access the account or location. The patent provides many examples of users, which include credit card companies or banks who hold the accounts of identity owners, healthcare related organizations who manage medical records for identity owners, lenders to identity owners, and security companies who control a specific secure location belonging to identity owners.

The asserted claims also refer to a "transaction partner." The term "transaction partner" does not appear in the specification. Indeed, the term "transaction partner" does not appear in the claims or specification in U.S. Application No. 11/115,239, the application to which the '658 patent claims priority. Instead, the term first appeared in a preliminary amendment filed almost nine years later. Neither the preliminary amendment nor the communication between the patent examiner and the applicant discussed or explained the meaning of "transaction partner." There is also no commonly accepted definition for "transaction partner." The key issue on appeal is who or what is a "transaction partner" in the context of the patent claims.

In its briefing, Mantissa contended that "a POSA would be able to decide that 'transaction partner' means 'seller.'" Appellant Opening Br. 27. A transaction partner would seek permission to engage in a transaction with a user (e.g., a credit company) who would determine whether a proposed transaction (e.g., sale) is authorized. Mantissa's construction may make sense in some contexts, such as if the user is a credit card company seeking permission from a service provider for a transaction partner to access a financial account maintained by the credit card company and the transaction partner is a seller seeking to process a charge to an individual's credit card account. But the

claims and specification are not so limited, and "[i]t cannot be sufficient that a court can ascribe some meaning to a patent's claims . . . ." *Nautilus*, 572 U.S. at 911 (emphasis omitted); *see also TVnGO Ltd. (BVI) v. LG Elecs. Inc.*, 861 F. App'x 453, 458–59 (Fed. Cir. 2021) (non-precedential) ("Even if it may be possible to 'ascribe some meaning' to the disputed limitation, . . . more is required: one of ordinary skill must have reasonable certainty.").

The specification makes clear that the claims cover a broad array of scenarios involving financial accounts where construing "transaction partner" to mean "seller" would not make sense.  For example, the specification recites a "[u]ser [] may be, by way of non-limiting example, a credit card company, credit reporting agency, merchant, banking institution, brokerage firm, insurance provider, hospital, medical caregiver, computer, corporation, or family member.  User [] may also in theory be an imposter." '658 patent, col. 8, ll. 17–23; *see also id.*, col. 9, ll. 13–14, col. 14, ll. 21–27.  In many of these situations there is no seller, and the term "transaction partner" in these contexts cannot mean "seller."

For example, the specification describes an embodiment where the user is a credit reporting agency seeking to "determine if [a] loan applicant had an identity account profile" and provide "a credit worthiness report for the loan applicant" to a bank. '658 patent, col. 12, ll. 12–17.  When the credit reporting agency is seeking access to the financial account of the loan applicant, it is not maintaining an account or engaging in a transaction involving a seller of goods or services.  As another example, a family member might seek to access the identity owner's financial account, but the family member is not maintaining an account or engaging in a transaction with a seller.  In addition, the specification describes a situation where "a merchant user" requests permission for "a purchase at 3:00 AM" that is not authorized. '658 patent, col. 11, ll. 40–50.  In this scenario, the merchant or "seller" is identified as the "user." *Id.* If

the seller is the user who is seeking permission to use the account, it would seem that whoever is on the other side of the transaction would not be characterized as a "seller." Given how broadly the specification defines users and transactions, the intrinsic evidence does not support construing "transaction partner" to mean "seller."

C

At oral argument, Mantissa argued that even if its proposed construction of "seller" does not solve the indefiniteness problem, "transaction partner" could be construed more broadly to mean "a party to a transaction"—a construction not offered at the district court or in the briefing in this court. Oral Arg. at 11:24–12:15. Even assuming that this argument is not forfeited, this construction exacerbates the indefiniteness problem rather than solves it.

The claims require defining "for a plurality of individual categories, whether each category is authorized or unauthorized for transactions using the financial account, each category representing a different type of transaction partner." '658 patent, col. 15, ll. 20–29. The proposed definition of "transaction partner" includes multiple transactions—those between the user and the identity owner, the user and the service provider, the identity owner and a third party, the user and a third party, and possibly other combinations of entities. The specification indicates that there are, or at least can be, multiple parties to each transaction, which includes the user, the identity owner, and the service provider. *See* '658 patent, col. 9, ll. 13–18 ("In a preferred embodiment, [the] user [] is a lending institution such as a bank, [the] identity owner [] is a person, and [the] service provider [] is a form of company that preferably would use, . . . electronic methodology such as a computer server to provide a network <u>through which all parties to the transaction can communicate</u>." (emphasis added)), Fig. 2 (illustrating how the service provider connects to the user and identity owner). Based on the specification, any one of

these parties, in addition to others, such as third-party merchants, would be "a party to a transaction."

There are also many examples of different transactions involving financial accounts. *See, e.g.*, *id.*, col. 2, l. 66–col. 3, l. 2; *id.*, col. 8, ll. 45–55 (making a credit card transaction); *id.*, col. 11, ll. 40–59 (making a purchase); *id.*, col. 12, ll. 7–19 (applying for a loan); *id.*, col. 13, l. 64–col. 14, l. 3 (withdrawing money from a bank account). Under the newly proposed definition, if transaction partner were defined as "a party to a transaction" (a conclusion not supported by the patent), a POSA would not understand with reasonable certainty how to categorize different types of transaction partners for the purpose of protecting an identity owner's financial account from unauthorized transactions. To construe the term "transaction partner" to include each of the multiple parties to the multiple types of transactions simply makes no sense if the purpose of categorizing is to determine whether a potential party is authorized or unauthorized to engage in a transaction. For example, the identity owner and service provider—who are parties to a transaction—do not require authorization.

Because the specification and claims fail to provide adequate guidance as to the identity of the "transaction partner," the term "transaction partner" is indefinite. In other cases, we have found terms to be indefinite when a POSA could not identify with reasonable certainty the identity of what the term refers to. *See HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 689–91 (Fed. Cir. 2019) (finding the term "Impurity A" indefinite when "the written description provides no clue as to the identity of" it). Given the breadth of transactions described, the dearth of details defining the contours of "transaction partner" and the "individual categories" creates a "zone of uncertainty," *Nautilus*, 572 U.S. at 909 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). The public is not apprised of what is claimed by the patent. *See id.* We agree

with the district court that the term "transaction partner" is indefinite, and the asserted claims are invalid.

## II.   OFF

Mantissa asks us to review the district court's construction of "OFF." We lack the jurisdiction to do so because the decision in the district court under review did not rest on any such determination. While the claim construction may have consequences for other cases, it has no significance for this case.

In the joint stipulation to enter final judgment at the district court, Mantissa acknowledged that the district court's holding that claims 1 and 7 are invalid for indefiniteness rendered all but one of the asserted claims invalid, and the one remaining claim was withdrawn. The parties agree that the judgment of invalidity rests on the indefiniteness of the term "transaction partner." The joint stipulation does not mention, let alone explain, the effect of the district court's construction of the term "OFF" on the issue of infringement or any other dispositive issue. At oral argument, both parties agreed that the construction of "OFF" would not affect the final judgment. Oral Arg. at 17:54–18:27, 33:25–34:03.

With some exceptions not applicable here, our jurisdiction is to review "a final decision of a district court of the United States." 28 U.S.C. § 1295(a)(1). The claim construction issue is not at issue in the final decision here. Therefore, we lack jurisdiction to review it. We have declined to address issues in similar circumstances when it is not possible to discern from the stipulated judgment how a district court's ruling on an issue would be dispositive. *See AlterWAN, Inc. v. Amazon.com, Inc.*, 63 F.4th 18, 22 (Fed. Cir. 2023) (declining to address claim construction issues when "the stipulate[d judgment] d[id] not provide sufficient detail to allow us to resolve the claim construction issues presented on appeal"); *Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (declining to address a claim

construction ruling when "it is impossible to discern from the stipulated judgment which of the district court's claim construction rulings would actually affect the issue of infringement"); *Fresenius USA, Inc. v. Baxter Int'l*, Inc., 582 F.3d 1288, 1304 (Fed. Cir. 2009) ("Fresenius gave this court little guidance and cited no record support regarding why a modified claim construction would affect the infringement judgment, the validity judgment, or both. For that reason alone, we may decline to consider Fresenius's claim construction arguments."); *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1350 (Fed. Cir. 2006) (declining to address a district court's claim constructions that "would not affect the judgment of non-infringement").

The parties ask us to address the district court's construction of "OFF" because the same term is "pending claim construction under the same patent-in-suit in at least three parallel litigations," Appellee Br. 25–26, which are currently stayed pending this appeal, and in at least those cases, Mantissa agreed "to be bound by the claim construction on the two overlapping terms/phrases in" this case. Minute Entry, Mantissa Corp. v. Fiserve Sols., LLC, No. 19-cv-03204, ECF No. 42. We have refrained, and are indeed prohibited, from issuing opinions in such circumstances. *See Personalized User Model, LLP v. Google Inc.*, 797 F.3d 1341, 1349–50 (Fed. Cir. 2015) ("Despite PUM's concerns that the construction might be given preclusive effect in future litigation involving its related patents, we may not provide an advisory opinion on the meaning of a claim term that does not affect the merits of this appeal and thus is not properly before us.").[2]

---

[2]    This is not a situation in which we originally had jurisdiction to address the issue, and the claim construction issue became moot on appeal as to the particular case.

CONCLUSION

We affirm the district court's determination that the term "transaction partner" is indefinite and affirm the district court's determination that claims 1, 3, 7, 8, 10–12, and 15 are invalid for indefiniteness. We decline to address the district court's construction of "OFF."[3]

**AFFIRMED**

---

Under such circumstances collateral consequences would perhaps justify finding that the issue was not moot on appeal.

[3] Because we lack authority to rule on the issue, the parties would not be collaterally estopped from contesting the issue in the other cases that adopted the district court's claim construction. *See Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1352–53 (Fed. Cir. 2022); *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016); *see also* Restatement (Second) of Judgments § 28 (1982).

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MANTISSA CORPORATION,**
*Plaintiff-Appellant*

**v.**

**FIRST FINANCIAL CORPORATION, FIRST FINANCIAL BANK, N.A.,**
*Defendants-Appellees*

---

2022-1963

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:17-cv-09174, Judge Virginia M. Kendall.

---

SCHALL, *Circuit Judge*, concurring-in-part and dissenting-in-part.

The Supreme Court has instructed that, under pre-AIA 35 U.S.C. § 112, ¶ 2, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). For our part, we have stated that "[o]nly if a disputed claim term remains ambiguous after analysis of the intrinsic evidence should the court rely on extrinsic evidence." *Actelion Pharms. Ltd. v.*

*Mylan Pharms. Inc.*, 85 F.4th 1167, 1174 (Fed. Cir. 2023) (citing *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1372–73 (Fed. Cir. 2002)).  I agree with the majority that, in this case, it is not necessary to resort to extrinsic evidence in order to determine whether claims 1, 3, 7, 8, 10–12, and 15 of the '658 patent are indefinite.  However, I do not agree with the conclusion that the majority reaches after examining the intrinsic evidence: that those claims are indefinite.

The claim term at issue is "transaction partner."  It appears in both independent claims at issue, claims 1 and 7.  The majority holds these claims indefinite because it concludes that "the specification and claims fail to provide adequate guidance as to the identity of the 'transaction partner.'"  Maj. Op. 10.  In my view, however, examination of the claims and specification does reveal the meaning of "transaction partner."

Both before the district court and in its briefing on appeal, Mantissa argued that, in the context of the '658 patent, the term "transaction partner" means "seller."  *See* J.A. 555, Appellant's Br. 25.  The majority correctly rejects this construction.  However, even if we disagree with the claim construction urged upon us by Mantissa, we are free to examine the intrinsic record ourselves and arrive at what we believe is the correct construction.  *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323–24 (Fed. Cir. 2008) (adopting "a new claim construction on appeal," and noting that "the court has an independent obligation to construe the terms of a patent [and] need not accept the constructions proposed by either party").  In my view, for the following reasons, the correct construction of "transaction partner" is "party to a transaction."[1]

---

[1]    At the conclusion of oral argument before us, counsel for Mantissa stated that he agreed with this

I begin with the claim language. Claim 1 of the '658 patent recites in pertinent part:

1.   A method for a service provider to control use of an entity's financial account to facilitate transactions, comprising:

setting scope of use, defined by the entity via a network, for the financial account, including at least:

. . .

(b) for a plurality of individual categories, whether each category is authorized or unauthorized for transactions using the financial account, *each category representing a different type of transaction partner*; . . .

. . .

receiving, via a network from a source other than the entity, an inquiry regarding a proposed transaction that would use the financial account;

determining, relative to the scope of use, whether the financial account may or may not be used for the proposed transaction, comprising:

. . .

---

construction. Oral arg. 35:02–13; *see also id.* at 3:22–37 ("Our position is that 'transaction partner' refers to the parties to a transaction . . . .").

4     MANTISSA CORPORATION v. FIRST FINANCIAL CORPORATION

> denying when . . . the proposed
> transaction falls within a category
> that is unauthorized;
>
> . . .
>
> permitting when . . . the proposed
> transaction falls within a category
> that is authorized, . . . .

'658 patent, col. 15 ll. 20–53 (emphasis added).

Claim 7 of the '658 patent recites in pertinent part:

7.   A method for a service provider to control use
of an entity's financial account to facilitate trans-
actions, . . . , the method comprising:

> setting scope of use, as defined by the entity
> via a network, for the financial account, in-
> cluding at least:
>
> > . . .
> >
> > (b) setting a category status for
> > each category of a plurality of cate-
> > gories as either authorized or un-
> > authorized for transactions using
> > the financial account, *each category
> > representing a type of transaction
> > partner*; . . .
> >
> > . . .
>
> receiving, via a network from a source
> other than the entity, an inquiry regarding
> a proposed transaction on the financial ac-
> count;
>
> determining, relative to the scope of use, a
> response status to the inquiry reflecting
> whether the financial account may or may

> not be used for the proposed transaction, comprising:
>
> . . .
>
> setting the response status to impermissible when . . . the proposed transaction falls within a category having an unauthorized category status;
>
> . . .
>
> setting the response status to permissible when . . . the proposed transaction falls within a category having an authorized category status . . . .

'658 patent, col. 16 ll. 12–56 (emphasis added).

The preambles of both claims 1 and 7 refer to controlling "use of an entity's financial account to facilitate transactions." At the same time, both claims include a step of "setting scope of use . . . for the financial account." That step requires setting, for a "plurality of [ ] categories," whether each category is "authorized or unauthorized for transactions using the financial account, each category representing a [ ] type of transaction partner." I believe that the plain language of the claims (references to facilitating transactions followed by references to "transaction partner") compels the conclusion that a "transaction partner" is a party to a transaction. This is further supported, I think, by the claimed steps of setting parameters regarding whether certain transactions with certain categories of "transaction partner[s]" will be authorized or unauthorized, followed by "permitting" or "denying" a proposed transaction based in part upon whether the proposed transaction pertains to a category of transaction partner that is authorized or unauthorized. To me, it is clear from this claim language that the claims pertain to permitting

6    MANTISSA CORPORATION v. FIRST FINANCIAL CORPORATION

or denying a proposed transaction in which the financial account would be used, based upon whether the party to the transaction is one that falls into a category that is authorized or unauthorized.

The specification further supports this conclusion. It recites that an embodiment of the claimed invention comprises "receiving, at a service provider, a request to determine whether the use of an entity's identity by a *party* is authorized for a requested application." '658 patent col. 3 ll. 34–35 (emphasis added). Of particular significance, it seems to me, the specification provides the example that "an identity owner 30 who spends too much money at a certain store or type of store can set identity attributes 13 in account profile 14 to deny requests from that store or type of store." *Id.* col. 6 ll. 47–51. And, the specification recites at length the various types of situations in connection with which the claimed invention may be employed. These include credit card use, making a request for a loan, and bank account withdrawals. *Id.* col. 2 l. 64–col. 3 l. 2, col. 3 ll. 4–6, col. 5 ll. 48–50, 54–55, col. 6 ll. 47–51, col. 13 l. 64–col. 14 l. 3. Each of these situations involves a "transaction" in which a party to a transaction who is separate and distinct from the "entity" seeks to use what claims 1 and 7 both refer to as the entity's "financial account." *Id.* col. 15 l. 21, col. 16 l. 14.[2] In sum, a "party to a transaction" is plainly the "transaction partner" of claims 1 and 7.

The majority's view is that the specification provides "multiples parties to each transaction," i.e., the user, the

---

[2]    The specification also refers to situations involving gaining access to medical records. '658 patent col. 3 ll. 2–4, col. 3 l. 6, col. 5 ll. 51–53, col. 6 ll. 40–47. At first glance, these situations do not appear to fall within the scope of the claims of the '658 patent, which pertain to "financial transactions," although I recognize there may be financial transactions that pertain to medical records.

identity owner, the service provider, or a third party, any one of which could be a "party to a transaction." Maj. Op. 9–10. To the extent that is the case, I believe, though, that the claim language clarifies that a "transaction partner" is something or someone that could enter into a transaction using the financial account, authorization for the use of which must be obtained, and would not be the service provider, entity, or financial account owner. Thus, one of skill in the art would be informed of the scope of the invention with reasonable certainty.

In my view, the district court thus erred in holding independent claims 1 and 7 of the '658 patent and the related dependent claims indefinite. I would therefore reverse the decision of the district court and remand the case to the court for further proceedings.

Finally, the majority holds that, because there has been no final judgment relating to the district court's construction of the term "OFF" appearing in claims 1, 3, 7, 8, 10–12, and 15 of the '658 patent, we cannot consider that issue. I agree with this holding. Accordingly, I join that part of the majority opinion.

For the foregoing reasons, I respectfully concur-in-part and dissent-in-part.